UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

|  |  |
|---|---|
| ADAM GRAD, on Behalf of Himself and All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>           v.<br><br>IRONNET, INC., KEITH B. ALEXANDER, JAMES C. GERBER, and WILLIAM E. WELCH,<br><br>                  Defendants. | Case No.  1:22-cv-00449-RDA-JFA |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRIS RIEMER**
**FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**<u>APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ............................................................................................................................ 5

I.    RIEMER SHOULD BE APPOINTED LEAD PLAINTIFF ............................................ 5

      A.    Riemer Is Willing to Serve as a Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff. ................................................................ 6

      B.    Riemer Has the "Largest Financial Interest" in the Action. .................................. 6

      C.    Riemer Otherwise Satisfies the Requirements of Rule 23. .................................... 7

      D.    Riemer Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses. ................................................................................... 9

II.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED............ 9

CONCLUSION....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chamblee v. Terraform Power, Inc.*, No. PX 16-981,
  2016 U.S. Dist. LEXIS 98619 (D. Md. July 28, 2016)...............................................................7

*Hirtenstein v. Cempra, Inc.*, Nos. 1:16cv1303 *et al.*,
  2017 U.S. Dist. LEXIS 103799 (M.D.N.C. July 5, 2017) ..........................................................7

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)........................................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
  2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ...........................................................7

*In re Microstrategy Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) .........................................................................................9

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ............................................................................................6

*Johnson v. Pozen, Inc.*, No. 1:07CV599,
  2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008)......................................................7, 8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ................................................................................................9

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
  1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997). ............................................................6

*Rice v. Genworth Fin. Inc.*, No. 3:17cv59,
  2017 U.S. Dist. LEXIS 137110 (E.D. Va. Aug. 25, 2017)..........................................................8

*Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG,
  2019 U.S. Dist. LEXIS 33329 (D. Md. Feb. 28, 2019) ..............................................................6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................................10

*Weiss v. York Hosp.*,
  745 F.2d 786 (3d Cir. 1984)........................................................................................................7

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................... *passim*

ii

15 U.S.C. §78j(b) ........................................................................................................................6

15 U.S.C. § 78t(a) .......................................................................................................................6

Private Securities Litigation Reform Act of 1995 ................................................................1, 6, 9

## **Rules**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*
17 C.F.R. § 240.10b-5 .................................................................................................................1

Chris Riemer ("Riemer") respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Riemer as Lead Plaintiff on behalf of all purchasers of IronNet, Inc. ("IronNet" or the "Company") securities between September 15, 2021 and December 15, 2021, inclusive (the "Class Period") (the "Class"); and (2) approving proposed Lead Plaintiff's selections of Pomerantz LLP ("Pomerantz") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. IronNet investors, including Riemer, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of IronNet securities to fall sharply, damaging Riemer and other IronNet investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Riemer purchased 9,289 IronNet shares and 198 options contracts, expended $129,382 on his purchases, retained 8,289 of his IronNet shares, and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $81,272 in connection with his purchases of IronNet securities. *See* Declaration of Steven J. Toll in Support of Motion ("Toll Decl."), Exhibit ("Ex.") A. Accordingly, Riemer believes that he has the largest financial interest in the relief sought in the Action.

1

Beyond his considerable financial interest, Riemer also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Riemer has selected Pomerantz as Lead Counsel, and Cohen Milstein as Liaison Counsel, for the Class. These firms and their attorneys are highly experienced in the area of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, based on his significant financial interest, his satisfaction of the applicable requirements of Rule 23, and his commitment to overseeing this litigation, Riemer respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selections of Lead Counsel and Liaison Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaint in the Action, IronNet designs and develops solutions for cyber-attacks. It offers IronDefense, a network traffic analysis platform that delivers scalable behavioral analysis and integrated packet-level cyber hunt to detect advanced threats; and IronDome, a collective defense solution that delivers machine-speed visibility of potential threat campaigns targeting participant industry peers. The Company also provides a suite of technologies that provide real-time threat assessment and updates, behavioral modeling, big data analytics, and proactive responses; and consulting and training programs to protect against current and emerging threats. Its security solutions include collective defense, network traffic analysis, and cyber assessment tools. The Company serves energy and utilities, financial services, healthcare and life sciences, defense, and public sector industries.

2

On August 27, 2021, IronNet became a publicly traded company via a merger (the "Merger") with LGL Systems Acquisition Corp. ("LGL"), a blank check company otherwise known as a special purpose acquisition vehicle ("SPAC"). Like other SPACs, LGL did not initially have any operations or business of its own. Rather, it raised money from investors in an initial public offering and then later used the proceeds from the offering to acquire IronNet, which had been a private company.

The proposed merger that would result in IronNet becoming a publicly traded company required approval of LGL shareholders. In determining how to vote, LGL shareholders were provided with, among other things, IronNet's financial projections.

On August 10, 2021, in anticipation of the Merger vote, IronNet updated its financial forecasts "[d]ue to shifts in the anticipated closing of several new customer contracts." It forecasted fiscal year 2022 ("FY 2022") (ended January 31, 2022) revenues of $43 million to $45 million and annual recurring revenue ("ARR") of $75 million, among other things.

Based, in part, on these projections, on August 26, 2021, LGL shareholders voted to approve the Merger at a special shareholder meeting and the merged Company's stock began trading on the New York Stock Exchange the next day.

On September 14, 2021, after market close, defendants issued a press release entitled "IronNet Announces Fiscal Second Quarter 2022 Financial Results," which announced disappointing revenue of $6.1 million for second quarter 2022 (ended July 31, 2021) compared to $7.9 million for second quarter 2021, which missed expectations by $1.3 million. It further announced second quarter 2022 ARR of $24.1 million compared to $19.5 million in second quarter 2021 and a net loss of $17.2 million compared to $14.3 million for second quarter 2021.

Attempting to counteract the otherwise disappointing results, the press release reassured

3

investors that the Company would still meet its financial guidance, as previously provided in connection with the Merger vote.

Defendants' statements, however, were materially false and misleading when made because they misrepresented and failed to disclose adverse facts about IronNet's business, operations and prospects which were known to defendants or recklessly disregarded by them as follows: (i) the Company had materially overstated its business and financial prospects; (ii) the Company was unable to predict the timing of significant customer opportunities which constituted a substantial portion of its publicly-issued FY 2022 financial guidance; (iii) the Company had not established effective disclosure controls and procedures to reasonably ensure its public disclosures were timely, accurate, complete, and not otherwise misleading; and (iv) as a result, the Company's public statements were materially false, misleading, and/or lacked any reasonable basis in fact at all relevant times.

On December 15, 2021, after market close, defendants issued a press release entitled "IronNet Reports Third Quarter Fiscal 2022 Financial Results," in which they slashed IronNet's FY 2022 guidance, which had been repeated shortly before the Merger vote and which was reaffirmed just months earlier.

On the analyst and investor call later that same day to discuss these surprising results, defendant William E. Welch, a Co-Chief Executive Officer of IronNet and a member of the Company's Board of Directors, announced that the Company had fired its Chief Revenue Officer.

On the call, Defendants also admitted that, despite having first publicly issued IronNet's FY 2022 guidance in March 2021, they did not have any confidence as to when substantial revenues underlying the guidance would actually come in.

On this news, IronNet's stock price plummeted from $6.80 per share on December 15,

4

2021 to a close of $4.66 per share the following day, a 31% decline, on abnormally high trading volume.

## ARGUMENT

### I.    RIEMER SHOULD BE APPOINTED LEAD PLAINTIFF

Riemer should be appointed Lead Plaintiff because, to the best of his knowledge, he has the largest financial interest in the Action and otherwise strongly satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Riemer satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff among Class members and, therefore, should be appointed Lead Plaintiff for the Class.

5

### A.    Riemer Is Willing to Serve as a Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff.

On April 22, 2022, counsel for the plaintiff in the Action caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities class action had been filed against Defendants, and which advised investors in IronNet securities that they had 60 days from the date of the PSLRA Notice— *i.e.*, until June 21, 2022—to file a motion to be appointed as Lead Plaintiff.  *See* Toll Decl., Ex. B.

Riemer has timely filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification executed by him attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C. Accordingly, Riemer satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B.    Riemer Has the "Largest Financial Interest" in the Action.

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Riemer has the largest financial interest of any IronNet investor seeking to serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997); *see Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329, at *11-12 (D. Md. Feb. 28, 2019); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord*

6

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-25 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Riemer: (1) purchased 9,289 IronNet shares and 198 options contracts; (2) expended $129,382 on his purchases of IronNet securities; (3) retained 8,289 of his IronNet shares; and (4) as a result of the disclosures of the fraud, suffered losses of $81,272 in connection with his Class Period transactions in IronNet securities. *See* Toll Decl., Ex. A. To the extent that Riemer possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**C.      Riemer Otherwise Satisfies the Requirements of Rule 23.**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a *prima facie* showing of typicality and adequacy is required. *Chamblee v. Terraform Power, Inc.*, No. PX 16-981, 2016 U.S. Dist. LEXIS 98619, at *4-5 (D. Md. July 28, 2016); *Hirtenstein v. Cempra, Inc.*, Nos. 1:16cv1303 *et al.*, 2017 U.S. Dist. LEXIS 103799, at *8-9 (M.D.N.C. July 5, 2017).

"The typicality requirement of the rule requires that a Lead Plaintiff suffer the same injuries as the class as a result of the defendant's conduct and has claims based on the same legal issues." *Johnson v. Pozen, Inc.*, No. 1:07CV599, 2008 U.S. Dist. LEXIS 12004, at *5 (M.D.N.C. Feb. 15, 2008) (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 810 n.36 (3d Cir. 1984)). Riemer's claims are typical of those of the Class. Riemer alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading

7

statements of material facts and/or by omitting to disclose material facts concerning IronNet. Riemer, as did all Class members, purchased IronNet securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove IronNet's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." *Pozen*, 2008 U.S. Dist. LEXIS 12004, at \*5; *see also Rice v. Genworth Fin. Inc.*, No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110, at \*19-20 (E.D. Va. Aug. 25, 2017). As set forth in greater detail below, Riemer has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choices of Pomerantz and Cohen Milstein to the Court for approval as Lead Counsel and Liaison Counsel, respectively, for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz and Cohen Milstein, Riemer is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation. There is no evidence of antagonism or conflict between Riemer's interests and the interests of the Class. Riemer has submitted a signed Certification declaring his commitment to protect the interests of the Class (*see* Toll Decl., Ex. C), and the significant losses incurred by Riemer demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Riemer has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead

8

Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps he is prepared to take to prosecute this litigation on behalf of the Class.  *See id.*, Ex. D.

### D.   Riemer Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses.

The presumption in favor of appointing Riemer as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)   will not fairly and adequately protect the interests of the class; or

(bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Riemer's ability and desire to fairly and adequately represent the Class has been discussed above.  Riemer is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Riemer should be appointed Lead Plaintiff for the Class.

## II.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources . . . ."); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel

9

retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Riemer has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Toll Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

Cohen Milstein is also well-qualified to serve as Liaison Counsel for the Class. As its firm resume reflects, Cohen Milstein has worldwide expertise as counsel for U.S. and non-U.S. institutional investors who have been the victims of securities fraud. By applying innovative legal theories and litigation strategies, it has recovered billions of dollars for its clients in some of the largest and most complex securities class actions. Significant securities settlements obtained by Cohen Milstein, acting as lead or co-lead counsel, include a $500 million settlement in the

10

Countrywide mortgage-backed securities ("MBS") class action (*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302-MRPMAN (C.D. Cal.)); a $275 million settlement in an MBS class action against the Royal Bank of Scotland (*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.)); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks (*New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (HB) (S.D.N.Y.)); and a $90 million settlement in a class action against MF Global (*Rubin v. MF Global, Ltd.*, No. 08-cv-2233 (VM) (S.D.N.Y.)), among others. *See* Toll Decl., Ex. F. Additionally, Cohen Milstein's attorneys have extensive familiarity with the Local Civil Rules and practice norms of this Judicial District.

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Riemer's choice of counsel have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute this Action effectively and expeditiously. The Court may be assured that by approving Riemer's selection of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel, the Class members will receive the best legal representation available. Thus, Riemer respectfully urges the Court to appoint Pomerantz and Cohen Milstein to serve as Lead Counsel and Liaison Counsel, respectively, for the Class.

## CONCLUSION

For the foregoing reasons, Riemer respectfully requests that the Court issue an Order: (1) appointing Riemer as Lead Plaintiff for the Class; and (2) approving Riemer's selections of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

11

Dated: June 21, 2022

Respectfully submitted,

/s/ Steven J. Toll
Steven J. Toll
S. Douglas Bunch
**COHEN MILSTEIN SELLERS &
   TOLL PLLC**
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
           dbunch@cohenmilstein.com

*Counsel for Lead Plaintiff Movant Chris Riemer
and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
           ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Chris Riemer
and Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movant Chris
Riemer*

12