UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| ADAM GRAD, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>IRONNET, INC., et al.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:22-cv-00449-RDA-JFA<br><br><u>CLASS ACTION</u> |

**SHIRLEY GUTHRIE, YONG KIM, AND ROGER CAROWAY'S MEMORANDUM IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD <u>PLAINTIFF</u>**

## I.    BACKGROUND AND INTRODUCTION

Five motions were filed by individuals seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) Shirley Guthrie, Yong Kim, and Roger Caroway (together the "IronNet Investor Group"); (2) James Shunk; (3) Xiao Ping Diana Dai; (4) Chris Riemer; and (5) Todd M. Frenchman.  *See* ECF 23, 26, 15, 19, 16, respectively. Subsequently, movants Ms. Dai and Mr. Frenchman withdrew their motions (ECF 32 and 33), while Mr. Riemer filed a notice that he does not oppose the competing motions (ECF 31).  Thus, the two remaining motions before the Court are those brought by the IronNet Investor Group and Mr. Shunk. And, while Mr. Shunk claims to have suffered the largest loss, the IronNet Investor Group is the only movant that satisfies *all* of the PSLRA's requirements.

Of Mr. Shunk's claimed $776,722 loss on his transactions in IronNet, Inc. ("IronNet") securities during the Class Period, only *8%*, or $64,128, resulted from his purchases of IronNet

- 1 -

*common stock* during the Class Period. *See* ECF 27-4. The remaining **92%** of Mr. Shunk's losses resulted from his trades in **options** contracts. Appointing Mr. Shunk, "whose losses overwhelmingly reflect" his trades in options "raises issues of his typicality and adequacy." *Di Scala v. ProShares Ultra Bloomberg Crude* Oil, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020). And, were Mr. Shunk appointed here, "factual issues unique to [him] 'would likely threaten to become the focus of the litigation.'" *Id.*; *see also Cook v. Allergn PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (movant did not meet Rule 23's typicality requirement where 61% of his losses were the result of options trading).[1] Mr. Shunk, therefore, is disqualified from being appointed lead plaintiff.

The IronNet Investor Group possesses the next largest financial interest after Mr. Shunk. In fact, each of the three members of the IronNet Investor Group suffered larger losses **individually** than any of the three movants that either withdrew their motions or do not oppose the competing motions: Ms. Dai, Mr. Riemer, or Mr. Frenchman. The IronNet Investor Group also satisfies the PSLRA's typicality and adequacy requirements, and its motion should be granted.

Ms. Dai and Mr. Frenchman withdrew their motions to be appointed lead plaintiff, and the motion filed by Mr. Riemer – who admittedly does not possess the largest financial interest – should be denied as moot. *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002) (court should consider motion of movant with smaller financial interest only if movant with larger losses fails to meet PSLRA requirements).

## II.    ARGUMENT

### A.    The PSLRA's Lead Plaintiff Process.

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). "The process begins with the identification of the movant with 'the largest financial interest in the

---

[1]    Unless otherwise noted herein, all emphasis is added and citations are omitted.

relief sought by the class.'" *Id*. (quoting 15 U.S.C. §78u–4(a)(3)(B)(iii)(I)(bb)). "If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff," and "identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id*. at 267.

The claimed losses of each movant are as follows:

| Movant | Claimed Loss |
|---|---|
| James Shunk | $776,722 |
| IronNet Investor Group:<br><br>Shirley Guthrie<br><br>Yong Kim<br><br>Roger Caroway | Total Loss:  $509,730.77<br><br>$189,662.17[2]<br><br>$162,271.64<br><br>$157,796.96 |
| Xiao Ping Diana Dai (motion withdrawn) | $70,262.46 |
| Chris Riemer | $81,272 |
| Todd Frenchman (motion withdrawn) | $15,969.76 |

**B.**     **Mr. Shunk Cannot Be Appointed Lead Plaintiff Because His Claims Are Not Typical of the Claims of the Class.**

Because Mr. Shunk claims the largest loss, the Court must focus its attention on him to ascertain whether he meets the typicality and adequacy requirements.  In short, he does not.  Mr. Shunk's $776,722 loss consists of: (1) $712,594 or 92% in options trades; and (2) $64,128 or 8% in

---

[2]    On July 5, 2022, Shirley Guthrie submitted a revised Certification to include options trades which were initially inadvertently left off of her transaction list.  ECF 34.  The options trades resulted in a small gain which reduced her loss, and the IronNet Investor Group's loss, by approximately $9,000.  This offset is reflected in the amounts listed in the chart above.

common stock trades.  ECF 27-4.  Despite that 92% of his losses occurred from his transactions in options contracts during the Class Period, Mr. Shunk seeks to have this Court appoint him lead plaintiff to prosecute this case through trial on behalf of a class made up primarily of investors who purchased common stock on the open market.  More concerning here, because of his significant options trades, Mr. Shunk's appointment "as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'"  *Cook*, 2019 WL 1510894, at *2 (declining to appoint movant where 61% of movant's losses resulted from options trades); *see also Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012) (noting the complex analysis of valuing options losses and comparing them to stock losses at the lead plaintiff stage because "options' valuable lives are limited, their value is conditional, and there is a large disparity between their price and their potential value").

The court in *Hecla Mining* struggled with ascertaining an options trader's "financial interest" for purposes of appointing a lead plaintiff because of these unique factual issues raised by options trades.  2012 WL 2872787.  The court found that using the typical factors to compare the losses of lead plaintiff movants did not work for options traders because comparing stock losses and options losses was "like comparing apples to oranges."  *Id*. at *4.  In the end, the court found that for purposes of the PSLRA, the financial interest in the relief sought by the class of the options trader was likely only ***approximately one-third*** of the losses the options trader claimed.  *Id*. at *4 n.3.  Similarly, here, Mr Shunk's losses on options cannot be compared to the financial interests of those that purchased stock, and he should not be appointed because his circumstances are undeniably "'markedly different'" from IronNet common stock purchasers during the Class Period.  *See Cendant*, 264 F.3d at 265.

While Mr. Shunk will likely rely upon his stock purchases to support his appointment, the miniscule amount of losses from those stock trades cannot resurrect his bid to be appointed lead plaintiff. Rather, recent case law emphasizes that even where a movant purchased both stock and options during the class period, whether the movant is typical and able to serve as lead plaintiff turns *decisively* upon whether the overwhelming majority of the movant's losses resulted from options trades or stock trades. If the majority is from options trades, like Mr. Shunk's losses here, the movant is not typical and cannot be appointed lead plaintiff. *Di Scala*, 2020 WL 7698321; *Cook*, 2019 WL 1510894

In *Di Scala*, the court declined to appoint a movant claiming an $18.2 million loss because *82%* of that loss was the result of *options trades*, despite common stock trades being responsible for the other 18%. 2020 WL 7698321, at *4. The stock trade losses did not bolster the movant's request to be appointed lead plaintiff because, as the court explained, the significant options trades demonstrated that the movant may not have been "motivated by the same market incentives as class members who traded shares on the open market," and thus, his appointment as lead plaintiff raised the concern that issues unique to the options investor would "'threaten to become the focus of the litigation'" at the class certification stage and otherwise. *Id*.

Likewise, the court in *Cook* denied a motion for appointment as lead plaintiff brought by an investor whose losses were based on *60%* in options trades and 40% in stock trades, noting that the movant was not "an investor whose claims will turn out to be typical of the average common stockholder." 2019 WL 1510894, at *2. *See also Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 566-67 (E.D. Tex. 2021) ("And, particularly relevant here, some courts have held that lead-plaintiff movants are atypical of or inadequate to represent a class largely consisting of common shareholders when a *substantial portion* of their losses are based on options.").

Here, Mr. Shunk's options losses are an even greater percentage of his total losses (92%) than the options losses found atypical in *Cook* (60%) and *DiScala* (82%).  And, while it is true that courts have appointed movants who traded in both stock and options, those movants' options trades were "insignificant" in comparison to the losses from their trades in common stock.  For example, in *In re Donnkenny Inc Sec Litig*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) the court appointed an investor who "***held almost six times as much common stock as it did options***."  Likewise, in *Rodriguez v. Draftkings Inc.*, 2021 WL 5282006, at *8 (S.D.N.Y. Nov. 12, 2021), the court noted that unlike the cases noted above, in the case before the court "'the overwhelming majority of [the movant's] trading activity is in common stock (99.98%),'" and the court did not find it compelling that "a miniscule fraction" of the movant's trading was in options.  *Id.*  *See also Chauhan v. Intercept Pharm.*, 2021 WL 235890, at *7 (S.D.N.Y. Jan. 25, 2021) (appointing movant who purchased options because he did not claim "any losses from options trading" but merely offset his stock losses with his gains from the options); *Crass v. Yalla Grp. Ltd.*, 2021 WL 5181008, at *6-*7 (S.D.N.Y. Nov. 8, 2021) (appointing a group including a movant whose losses were 100% from trades in stock despite having ***gains*** in options trades); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (appointing a group that included a movant who had purchased both options and stock where more than half of the losses were from stock trades); *Goldstein v. Puda Coal, Inc.*, No. 1:11-cv-0266-BSJ-HBP, ECF 23-3 (S.D.N.Y. June 13, 2011) (movant Hotel Ventures LLC's losses consisted of $412,125 from stock and only $307,250 from options).

Unlike these movants whose options trades resulted in insignificant losses, or even gains, in comparison to their stock losses, Mr. Shunk's options trades are responsible for ***nearly all*** of his losses.  As a result, Mr. Shunk's appointment would introduce issues unique to his trading, and he should not be appointed lead plaintiff to represent the class in this case.

4862-3136-9766.v1

### C.    The IronNet Investor Group Is the Most Adequate Plaintiff.

Because Mr. Shunk is disqualified from serving as lead plaintiff, the Court should turn its analysis to the movant with the next largest financial interest in the relief sought by the class, the IronNet Investor Group.  The group is a small, cohesive group of three individuals who each, separately and jointly, suffered losses greater than the remaining movant (Mr. Reimer).  *Compare* ECF 25-5, 25-7, 34-2 *with* ECF 21-1.  *See also Klugmann v. Am. Cap. Ltd.*, 2009 WL 2499521, at *4 (D. Md. Aug. 13, 2009) ("courts have routinely approved of group appointments, especially where the groups are small and include individuals who independently possess largest financial interests in the outcome of the litigation").

And, in contrast to Mr. Shunk's atypical options trading, the losses of each member of the IronNet Investor Group resulted from their purchases of IronNet common stock during the Class Period, and thus, their appointment would not "'introduce factual issues irrelevant to stockholder class members.'"  *Cook*, 2019 WL 1510894, at *2.[3]  In addition, the group submitted a Joint Declaration demonstrating that the members are willing and able to jointly direct counsel in the prosecution of this action.  *See* ECF 25-8.  Consequently, because the IronNet Investor Group possesses the largest financial interest, and also otherwise meets the typicality and adequacy requirements of Rule 23, it is the presumptively "most adequate plaintiff."  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  In order to rebut this presumption, competing movants are required to submit ***proof*** that the IronNet Investor Group members are either subject to a unique defense or unable to

---

[3]    Even offsetting Shirley Guthrie's losses from common stock with the minimal $9,000 gain from her options trades, her individual loss is still larger than any of the remaining movants. *See* chart, *infra*, at 3.  And, unlike Mr. Shunk whose losses primarily consist of options trades, Shirley Guthrie does not claim "any losses from options trading" but merely offset her common stock losses with gains from the options. *Chauhan*, 2021 WL 235890, at *7.  Consequently, unlike Mr. Shunk, Shirley Guthrie is not disqualified from serving as lead plaintiff. *Id*; *see also Crass*, 2021 WL 5181008, at *6-*7 (group appointed lead plaintiff where one of its members had insignificant gains in options trades).

4862-3136-9766.v1

adequately represent the class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Because no such proof exists, the IronNet Investor Group should be appointed Lead Plaintiff.

> **D.      The Remaining Movant Fails to Meet the PSLRA's Largest Financial Interest Requirement**

The remaining movant, Mr. Riemer, concedes that he does not possess the largest financial interest.  ECF 31.  And, because the IronNet Investor Group members are the presumptively most adequate plaintiff, and no proof exists to rebut this presumption, the motions of Ms. Dai, Mr. Riemer and Mr. Frenchman should be denied as moot.  *Cendant*, 264 F.3d at 267; *Cavanaugh*, 306 F.3d at 730 ("the court must . . . consider[] the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23").

## I.      CONCLUSION

Mr. Shunk claims to possess the largest financial interest, but he cannot be appointed lead plaintiff because his trading is not typical of the class.  The movant with the next largest financial interest, the IronNet Investor Group, not only possesses the largest financial interest in the relief sought by the class, but also meets the PSLRA's typicality and adequacy requirements. Consequently, the IronNet Investor Group is the most adequate plaintiff, and respectfully requests that the Court appoint it as Lead Plaintiff and deny the motions of the competing lead plaintiff movants.

4862-3136-9766.v1

DATED:  July 5, 2022

Respectfully submitted,

THE OFFICE OF CRAIG C. REILLY
CRAIG C. REILLY, VSB #20942


                    /s/ Craig C. Reilly
                   CRAIG C. REILLY

209 Madison Street, Suite 501
Alexandria, VA  22314
Telephone:  703/549-5354
703/549-5355 (fax)
craig.reilly@ccreillylaw.com

Local Counsel

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (259916)
JENNIFER N. CARINGAL (286197)
MICHAEL ALBERT (301120)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

- 9 -

4862-3136-9766.v1