**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ADAM GRAD, Individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00449-RDA-JFA |
| Plaintiff, | **CLASS ACTION** |
| vs. | |
| IRONNET, INC., KEITH B. ALEXANDER, JAMES C. GERBER, and WILLIAM E. WELCH, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF THE MOTION OF JAMES SHUNK FOR APPOINTMENT**
**AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF**
**COUNSEL, AND IN OPPOSITION TO COMPETING MOTION**

James Shunk ("Shunk") respectfully submits this memorandum of law in further support of his motion for: (a) appointment as Lead Plaintiff, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (b) approval of his selection of Bernstein Liebhard LLP ("Bernstein Liebhard") as Lead Counsel and The Kaplan Law Firm as Local Counsel for the litigation, and in opposition to the competing motion.[1]

## PRELIMINARY STATEMENT

Shunk has the largest financial interest in this Action by a wide margin. Indeed, Shunk sustained $776,722 in losses, which is approximately $250,000 or 50% greater than the losses asserted by the IronNet Investor Group – an unrelated group of investors cobbled together by three different law firms attempting to manufacture the largest financial interest. Shunk also readily satisfies the Rule 23 requirements. Thus, Shunk is entitled to the PSLRA's "strong" presumption of being the "most adequate plaintiff" to lead this Action (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). This presumption can only be rebutted with "proof" of inadequacy or atypicality. No such proof exists here. Accordingly, Shunk's motion should be granted, and the competing motion of the IronNet Investor Group should be denied.

There is no contest here as to financial interest. Shunk's $776,722 financial interest is head-and-shoulders above that of the IronNet Investor Group. As noted above, Shunk's financial interest is about $250,000 larger than that of the IronNet Investor Group – and that is if the Court

---

[1] Competing motions were made by (i) Shirley Guthrie, Yong Kim, and Roger Caroway (collectively, the "IronNet Investor Group" or the "Group"); (ii) Chris Riemer ("Riemer"); (iii) Xiao Ping Diana Dai ("Dai"); and (iv) Todd Frenchman ("Frenchman"). On July 5, 2022, Riemer filed a notice of non-opposition, and Dai and Frenchman withdrew their motions. ECF 31-33. Thus, the only competing movant that remains is the lawyer-driven IronNet Investor Group. Any undefined terms have the definitions set forth in Shunk's opening motion.

is even willing to accept this transparently lawyer-driven grouping (which it should not). As dictated by the PSLRA, once the movant with the largest financial interest is identified – here Shunk – the Court must next determine if that movant has also made a *prima facie* showing of Rule 23 adequacy and typicality. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Shunk has more than made a *prima facie* showing of his Rule 23 typicality and adequacy here. Shunk's claims are typical of those of the Class because he purchased IronNet securities during the Class Period at prices artificially inflated by Defendants' alleged misrepresentations and/or omissions and suffered substantial losses as a result therefrom. Therefore, Shunk's claims are premised on the same facts and legal theories as those of the Class, which sufficiently demonstrates typicality at the lead plaintiff stage.

Shunk is also more than adequate to serve as Lead Plaintiff. Shunk is a sophisticated investor with 25 years of investing experience and degrees in Business and Engineering. Shunk has no interests that are adverse to the interests of the Class. To the contrary, his interests are completely aligned with those of the Class, *i.e.* to maximize a recovery for the Class, and having the largest financial interest ensures that he will further that interest and prosecute this Action vigorously. Moreover, Shunk is the perfect lead plaintiff because he suffered losses from investments in both IronNet common stock and options – and thus is particularly well suited to protect the interests of the Class here. Shunk has also shown his adequacy through his selection of qualified counsel highly experienced in securities class actions as his proposed Lead Counsel for the Class.

In light of the foregoing, Shunk is entitled to the PSLRA's "strong presumption" of being appointed Lead Plaintiff. Once this "strong presumption" attaches, the Court must focus its attention on the presumptive lead plaintiff alone. *See Tchatchou v. India Globalization Capital.,*

2

*Inc.*, No. 8:18-cv-03396-PWG, 2019 WL 1004591, at *8 (D. Md. Feb. 28, 2019) ("once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job") (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001)). This "strong presumption" can only be rebutted with actual "proof" – and not mere speculation – that Shunk somehow does not satisfy Rule 23 (15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). There is no such proof here. Accordingly, Shunk should be appointed Lead Plaintiff.

On July 5, 2022, the IronNet Investor Group signaled that it intends to challenge the strong presumption in favor of Shunk when it filed a corrected PSLRA certification (that ***reduced*** the financial interest the Group had ***misreported*** to the Court). In light of the foregoing, it bears mentioning that beyond misreporting its financial interest and lacking the largest financial interest by a now even wider margin, the IronNet Investor Group suffers from other disqualifying infirmities that also doom its motion and underscore that any opposition to Shunk here is purely being made opportunistically by the Group's attorneys.

First, the IronNet Investor Group has not satisfied Rule 23's adequacy requirement as it is precisely the type of lawyer-driven group that the PSLRA eschews. The Group is comprised of three unrelated individuals represented by three different law firms, and there is no valid explanation of why a one-to-one ratio of group members and law firms is necessary here. *See* ECF 25-8. Moreover, the Group filed a joint declaration with its motion, but that document is conspicuously silent on key elements used to determine the validity of an unrelated grouping, including, *inter alia*, how the group intends to resolve disagreements and its decision-making

process. *See* ECF 25-8 at 5-9. These are fatal flaws and render the lawyer-driven Group inadequate to serve as lead plaintiff.

Second, the IronNet Investor Group submitted an inflated loss figure in its opening papers. Guthrie, one of the Group's members, swore under penalty of perjury that she invested only in IronNet common stock. *See* ECF 25-2. The Group represented Guthrie's financial interest as $198,682. *See* ECF 25-3. Yesterday, however, the Group filed an amended certification, revealing for the first time that Guthrie also invested in IronNet options – and made about $9,000 in them. *See* ECF 34. Guthrie's financial interest, thus, drops from $198,682 to about $189,662 and the Group's interest drops by the same amount. Courts have repeatedly disqualified lead plaintiff movants who misrepresent – innocently or otherwise – their losses on their sworn certifications. *See infra* at 9-11. Finally, Guthrie's gains on IronNet options renders the Group atypical of Class members who (like Shunk) suffered losses in both securities.

For these reasons, the Court should grant Shunk's motion in its entirety and deny the motion of the IronNet Investor Group.

## ARGUMENT

### I.   SHUNK IS UNDENIABLY THE PRESUMPTIVE LEAD PLAINTIFF

Shunk has the largest financial interest of any movant by a wide margin and also satisfies the typicality and adequacy requirements of Rule 23. Therefore, Shunk is entitled to the PSLRA's "strong presumption" that he is the "most adequate plaintiff" to represent the Class in the Action. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### A.  Shunk Has the Largest Financial Interest

The approximate loss suffered "is widely considered the most important factor" in determining the most adequate plaintiff.  *Tchatchou*, 2019 WL 1004591, at *4; *see also In re MicroStrategy Inc. Sec. Litig.,* 110 F. Supp. 2d 427, 433-34 (E.D. Va. 2000).[2]

As illustrated by the chart below, Shunk suffered losses of $776,722 in connection with his investments in IronNet securities, which far exceeds the financial interest of the IronNet Investor Group (by over $250,000) – and that is if the Court is even willing to accept the Group's problematic and lawyer-driven grouping:

| Movant | Reported Loss |
|---|---|
| James Shunk | $776,722 |
| The IronNet Investor Group | |
|    Shirley Guthrie | $189,662 |
|    Yong Kim | $162,271 |
|    Roger Caroway | $157,796 |
| Total | $509,730 |

Shunk's financial interest is 50% more than the Group and approximately $600,000 greater than that of the individual Group members.

Accordingly, Shunk unquestionably has the largest financial interest in the Action.

### B.  Shunk Also Handily Satisfies the PSLRA's Rule 23 Requirements

At the lead plaintiff stage, "[a] presumptive lead plaintiff need make only a *prima facie* showing that it can satisfy the typicality and adequacy requirements of Rule 23 to be appointed."

---

[2] Courts within this Circuit and nationwide calculate approximate losses using the last-in-first-out ("LIFO") accounting methodology.  *See*, *e.g.*, *Hirtenstein v. Cempra, Inc.*, No. 1:16cv1303, 2017 WL 2874588, at *3 n.4 (M.D.N.C. July 5, 2017) (calculating loss figures using LIFO method); *Wigginton v. Advance Auto Parts, Inc.*, C.A. No. 18-212 (MN), 2018 WL 5729733, at *3 (D. Del. Nov. 2, 2018); *McGee v. Am. Oriental Bioengineering, Inc*., No. 2:12-CV-5476-SVW-SH, 2012 WL 12895668, at *4 (C.D. Cal. Oct. 16, 2012).  However, it makes no difference how losses are calculated here because Shunk's financial interest exceeds that of the lawyer-driven IronNet Investor Group under any of the court-approved accounting methodologies.

*See Hirtenstein,* 2017 WL 2874588, at \*4. The bar is not high and Shunk more than meets the requirements here.

Shunk's claims are typical of those of the Class. "A person's claim is typical when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Kiken v. Lumber Liquidators Holdings, Inc.*, No. 4:13cv157, 2014 WL 12588686, at \*3 (E.D. Va. May 14, 2014) (citing *MicroStrategy*, 110 F. Supp. 2d at 435). Here, Shunk purchased IronNet securities during the Class Period at prices artificially inflated by Defendants' alleged misrepresentations and omissions and suffered substantial losses as a result. Additionally, Shunk's claims are based on the same legal theory and arise from the same events and course of conduct as those of the Class. Therefore, Shunk satisfies the typicality requirement.

Shunk also satisfies Rule 23's adequacy requirements. This standard is met if a plaintiff "(i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *MicroStrategy*, 110 F. Supp. 2d at 435-36. Here, Shunk has no interests that are adverse to those of the Class. To the contrary, Shunk's interests are perfectly aligned with the Class' interests of obtaining the maximum recovery for the Class due to the alleged fraud in the action. *See Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 658 (E.D. Va. 2016) (adequacy "satisfied where class counsel is qualified, competent, and experienced, and where class members do 'not have interests that are antagonistic to one another'") (citation omitted). In fact, Shunk is particularly well-suited to lead this action because he suffered losses in connection with both IronNet common stock and IronNet options. *See Grad* Compl. at ¶1; ECF 27-3 and 27-4 (Shunk certification and loss chart). Shunk has also retained competent counsel as demonstrated through his selection of Bernstein Liebhard,

a law firm with ample experience in securities litigation to represent the Class. *See* ECF 27-5 (Bernstein Liebhard Resume).

Additionally, Shunk is also sophisticated and clearly competent and adequate to serve as Class representative. Shunk lives in New York, has a Bachelor of Science Degree in Engineering, and Masters Degrees in Engineering and Business. Shunk has been investing for approximately 25 years, and is an entrepreneur with two businesses, Advantage Enterprises Unlimited, Inc. and Real Elements, Inc. Accordingly, Shunk more than satisfies the PSLRA's adequacy requirement.

For all the reasons set forth above, Shunk is entitled to the PSLRA's "strong presumption" that he is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job." *Tchatchou*, 2019 WL 1004591, at *8. This strong presumption can only be rebutted with "proof" – not mere speculation – that Shunk is somehow inadequate, and no such proof exists here. *See id.*, 2019 WL 1004591, at *9 ("[a]bsent some 'proof' that [presumptive lead plaintiff] cannot fulfill its responsibilities, the presumption must stand"). On this basis alone, Shunk's motion should be granted in its entirety.

## II.    THE IRONNET INVESTOR GROUP HAS SIGNALED IT WILL CHALLENGE SHUNK – BUT THAT CHALLENGE SHOULD FAIL

On July 5, 2022, the IronNet Investor Group filed a new PSLRA certification for one of its members, Guthrie, that reduced the Group's financial interest (which it had previously misreported). Beyond misstating its financial interest – and lacking the largest financial interest by a now even larger margin – the Group suffers from several other disqualifying infirmities that also fatally undermine its motion. First, the Group has not shown its adequacy under Rule 23 as

7

it is a lawyer-made group which provided no information as to how the Group intends to resolve disagreements or its decision-making process. Second, the Group submitted an inflated loss figure in its initial motion. These issues render the Group inadequate under Rule 23.

### A. The IronNet Investor Group is Lawyer-Made and Has Not Shown Its Rule 23 Adequacy

Courts routinely reject lawyer-made groups when, like here, they have not demonstrated their adequacy under Rule 23. The Group – with unrelated members from Texas, North Carolina, and Washington (*see* ECF 25-8 at ¶¶2-4) – has plainly been cobbled together by three different law firms for the sole purpose of aggregating their losses. This is precisely the type of conduct that the PSLRA seeks to prevent. As one court in this Circuit explained, "by allowing any group of plaintiffs to aggregate their losses to satisfy the 'largest financial interest' prong of the presumption, a court runs the risk that attorneys will seek to put together a group of unrelated plaintiffs for the sole purpose of having that group qualify as the group with the 'largest financial interest,' in turn leading to such attorneys' appointment as lead counsel." *In re E.Spire Commc'ns, Inc., Sec. Litig.*, 231 F.R.D. 207, 212-13 (D. Md. 2000). "Recognizing this risk and its inconsistency with the PSLRA, courts have held that both the context and the structure of the PSLRA demonstrate that a 'group of persons,' within the meaning of the statute, should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys." *Id*. at 213 (internal quotation omitted).

Further demonstrating the loose association among its members, the IronNet Investor Group's declaration is silent on important issues including, *inter alia*, how the group intends to resolve disagreements and its decision-making process. *See* ECF 25-8 at 5-9. Courts have found that such significant omissions fatally undermine a lead plaintiff motion. *See*, *e.g.*, *In re Cloudera,*

8

*Inc. Securities Litigation*, No. 19-cv-03221-LHK, 2019 WL 6842021, at \*7 (N.D. Cal. Dec. 16, 2019) (denying lead plaintiff status to group that provided no information about how it would resolve disagreements). *Compare Ferreira v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWk, 2020 WL 3246328, at \*7 (C.D. Cal. 2020) (finding plaintiff group capable of performing lead plaintiff function where they provided process for decision-making and addressing disagreements).[3]

Accordingly, the IronNet Investor Group has not satisfied Rule 23's adequacy requirement.

### B. The IronNet Investor Group Also Inflated Its Loss Figure, Further Undermining Its Motion And Any Real Opposition to Shunk

The Court should also disqualify the Group because it misstated its financial interest in its opening papers by omitting Guthrie's $9,000 gains in IronNet options. Courts have repeatedly found a lead plaintiff movant inadequate because of errors in a certification. *See, e.g., Plaut v. Goldman Sachs Grp., Inc.*, No. 18-cv-12084 (VSB), 2019 WL 4512774, at \*5 (S.D.N.Y. Sept. 19, 2019) (finding applicant inadequate in light of inadvertent "clerical" errors where losses were misstated). This is precisely what the IronNet Investor Group did here. On July 5, 2022, one day before oppositions came due, the Group submitted an amended certification revealing that Guthrie also traded in IronNet options – and made about $9,000 from such trades. ECF 34-2.[4] Guthrie omitted her IronNet options trades from her sworn certification despite the fact that the Class

---

[3] Additionally, the Group requests that the Court appoint three law firms (two law firms as lead counsel and one law firm as liaison counsel) without any explanation as to why this is necessary. This further shows that the Group is not unified and is purely lawyer-driven. *See MicroStrategy*, 110 F. Supp. 2d at 437 (the fact that a group retained three law firms "suggests the group was merely a diverse collection of plaintiffs assembled by these three firms for the purpose of winning the lead plaintiff role, allowing them to share the lead counsel role").

[4] Guthrie signed her amended certification on July 2, 2022. ECF 34-1. Yet the Group did not file her amended certification until the evening of July 5, 2022 (ECF 34) – the day before opposition papers were due.

definition includes all IronNet "securities", and the Group, in turn, omitted her options profits from their loss chart, inflating the Group's financial interest by over $9,000. *See* ECF 34.[5]

The Group's omission of a whole class of securities "that are subject of this action" (*see* ECF 25-2) and the Group's initially inflated loss figure "render [the Group] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement." *Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19-cv-8204 (VSB), 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019). *Cf. Shiring v. Tier Techns.,* 244 F.R.D. 307, 317 (E.D. Va. 2007) (denying, in part, motion for class certification because "[p]laintiff's inadvertence or his indifference to the PSLRA's certification requirements demonstrates a lack of diligence and candor that, in conjunction with his other deficiencies, counsel against a finding of adequacy").

Finally, Guthrie's gains on IronNet options also renders the Group atypical of Class members who suffered losses in both securities. Shunk, in contrast, lost money in both IronNet common stock and options.

---

[5] This $9,000 inflation turned out not to have made a difference because Shunk's loss is so much larger. But if the figures were close, it could have given the appearance that the IronNet Investor Group had the largest financial interest when it did not.

## CONCLUSION

For the foregoing reasons, and those given in his opening brief, Shunk respectfully requests that the Court appoint him as Lead Plaintiff and approve his selection of Bernstein Liebhard as Lead Counsel for the Class and The Kaplan Law Firm, as Local Counsel to the Class.[6]

Dated: July 7, 2022                                         Respectfully submitted,

                                                   **THE KAPLAN LAW FIRM**

                                                   /s/ Matthew B. Kaplan
                                                   Matthew B. Kaplan (VSB # 51027)
                                                   THE KAPLAN LAW FIRM
                                                   1100 N. Glebe Rd., Ste. 1010
                                                   Arlington, VA 22205
                                                   Tel: (703) 665-9529
                                                   mbkaplan@thekaplanlawfirm.com

                                                   *Local Counsel for James Shunk and Proposed*
                                                   *Local Counsel for the Proposed Class*

                                                   **BERNSTEIN LIEBHARD LLP**
                                                   Laurence J. Hasson
                                                   Joseph R. Seidman, Jr.
                                                   Jeffrey R. McEachern
                                                   10 East 40th Street
                                                   New York, NY 10016
                                                   Telephone: (212) 779-1414
                                                   Facsimile: (212) 779-3218
                                                   Email:  lhasson@bernlieb.com
                                                           seidman@bernlieb.com
                                                           jmceachern@bernlieb.com

                                                   *Counsel for James Shunk and Proposed Lead*
                                                   *Counsel for the Proposed Class*

---

[6] Shunk reserves the right to further address the IronNet Investor Group's adequacy or typicality.

11

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2022, I will electronically file the foregoing with the

Clerk of the Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all counsel of record.

Dated: July 7, 2022

/s/ *Matthew B. Kaplan*
Matthew B. Kaplan (VSB # 51027)
THE KAPLAN LAW FIRM
1100 N. Glebe Rd., Ste. 1010
Arlington, VA 22205
Tel: (703) 665-9529
mbkaplan@thekaplanlawfirm.com