**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ADAM GRAD, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>IRONNET, INC., KEITH B. ALEXANDER, JAMES C. GERBER, and WILLIAM E. WELCH,<br><br>    Defendants. | Case No. 1:22-cv-00449-RDA-JFA<br><br>**CLASS ACTION** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF JAMES SHUNK FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF COUNSEL, AND IN FURTHER OPPOSITION
TO THE COMPETING MOTION OF THE IRONNET INVESTOR GROUP**

James Shunk ("Shunk") respectfully submits this reply memorandum of law in further support of his motion, and in further opposition to the competing motion of the IronNet Investor Group (the "Group").[1]

## PRELIMINARY STATEMENT

Shunk is the "most adequate" plaintiff here and should be appointed Lead Plaintiff in this Action. The only other competing movant, the lawyer-driven Group, concedes that Shunk has the largest financial interest by a wide margin, and Shunk has demonstrated that he satisfies *prima facie* adequacy and typicality under Rule 23.[2]  *See* ECF 37, Group Br. at 2. Accordingly, Shunk is entitled to the PSLRA's "strong presumption" of being appointed Lead Plaintiff. This presumption can only be rebutted with "proof" – not speculation – that Shunk is inadequate or atypical of the Class. The Group's opposition confirms that no such proof exists here. Accordingly, Shunk's motion should be granted, and the Group's motion should be denied.

The Group – which is riddled with disqualifying infirmities – opportunistically tries to rebut Shunk's presumptive status by claiming Shunk is somehow atypical of the Class merely because he suffered a substantial percentage of his losses in purchases of call options. The Group's challenge, which acknowledges that Shunk also suffered substantial losses in IronNet common stock, is purely speculative, defies common sense, lacks support, and is otherwise meritless.

First, the Group concedes that IronNet options are a covered security in the Action. In fact, the Group corrected the sworn certification of Guthrie, one of its three unrelated members, to

---

[1] Any undefined terms have the definitions set forth in Shunk's opening motion. "Group Br. at _" refers to the Group's opposition. "Br. at _" refers to Shunk's opposition. "Shunk Decl." means the Declaration of James Shunk in Further Support of His Motion for Appointment as Lead Plaintiff and Approval of Counsel.

[2] The Group does not challenge and thus concedes Shunk's sophistication and that he has chosen adequate counsel. The Group claims only, without support, that Shunk is atypical because of his options trading. For the reasons detailed *infra*, the Group is wrong.

belatedly include her *gains* in IronNet options and correct the Group's misreported aggregate losses which omitted them.  Unlike the Group, Shunk suffered substantial losses in *both* common stock and options, which makes him a particularly well-suited representative of the Class here.

Second, the Group raises *no specific issues* regarding Shunk's options trading that would render him inadequate or atypical to represent the Class here.  Numerous courts have correctly rejected bald claims that mere options trading disqualifies a movant *per se*.  *See infra* at 6-7.  Moreover, the Group fails to explain how any supposed defenses that it claims *could* impact Shunk would be unique to a Class that includes members with losses in options – or how the Group's own trading in options would not subject it to the very same defenses.  At bottom, the Group does not offer any proof to rebut the presumption in favor of Shunk, and it is black letter law that self-serving speculations do not suffice.  *See*, *e.g.*, *Janovici v. DVI, Inc.*, No. Civ.A.2:03CV04795-LD, 2003 WL 22849604, at **12-13 (E.D. Pa. Nov. 25, 2003) (rejecting as speculative argument that movant with largest financial interest and losses from purchases of multiple types of securities was inadequate); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ("The presumption … may be rebutted *only upon proof* by a member of the purported plaintiff class that the presumptively most adequate plaintiff.") (emphasis added).

Third, the Group misplaces reliance on a small number of distinguishable and out of circuit cases – none of which rejected a movant *solely* because of its percentage of options losses, which is what the Group groundlessly asks the Court to do here vis a vis Shunk.  *See, e.g. Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (court gave preference to an institution over an individual with unusual trading that others argued was "self-contradictory" because he sold put and call options).  Indeed, making such a narrow finding here would yield an absurd and untenable result that would undermine the PSLRA's central financial

2

interest inquiry by requiring that a certain (and unspecified) percentage of losses be attributable to each security at issue.

Shunk indisputably has the largest financial interest by a wide margin; he suffered substantial losses in IronNet common stock and options; and he has no Rule 23 impediments.  In stark contrast, the Group – an amalgam of three unrelated individuals represented by three law firms – has substantially lower losses than Shunk (including *gains* in options); it deliberately or carelessly misrepresented its financial interest to the Court; and it failed to justify its grouping, including, *inter alia*, by not disclosing its decision-making structure.  *See In re Cloudera, Inc. Sec. Litig.*, 19-CV-03221-LHK, 2019 WL 6842021, at \*6 (N.D. Cal. Dec. 16, 2019) ("The [ ] Group does not satisfy the adequacy requirement of Rule 23 because it has not sufficiently justified its composition of unrelated investors with no disclosed decision-making structure.").  There is no contest that Shunk – whose only "blemish" here is having lost too much money – should be appointed Lead Plaintiff over the Group.

For these reasons, the Group has not come close to offering the necessary "proof" to rebut the strong presumption in favor of appointing Shunk as Lead Plaintiff.  Accordingly, the Court should grant Shunk's motion in its entirety and deny the motion of the Group.

**ARGUMENT**

**I.      SHUNK IS PRESUMPTIVE LEAD PLAINTIFF**

There is no dispute that Shunk has the largest financial interest in the Action by a wide margin.  The Group concedes as much in its opposition.  *See* Group Br. at 2.[3]  Shunk also more

---

[3] Though the Group concedes Shunk has the largest financial interest, it callously and self-servingly characterizes his common stock losses as "miniscule" (Group Br. at 5), but objectively, $65,000 is hardly miniscule (*cf.* Shunk Decl. ¶7), and the PSLRA does not differentiate between a movant's financial interest in different covered securities.

3

than satisfies the PSLRA's *prima facie* typicality and adequacy requirements.  Therefore, Shunk is entitled to the PSLRA's strong "presumption" that he is the "most adequate plaintiff" to represent the Class in the Action.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

At the lead plaintiff stage, "[a] presumptive lead plaintiff need make only a *prima facie* showing that it can satisfy the typicality and adequacy requirements of Rule 23 to be appointed." *See Hirtenstein v. Cempra, Inc.,* No. 1:16cv1303, 2017 WL 2874588, at \*4 (M.D.N.C. July 5, 2017).  Shunk more than meets the requirements here.  Shunk's claims are typical of those of the Class because, like other Class members, he purchased IronNet securities during the Class Period at prices artificially inflated by Defendants' alleged misrepresentations and omissions and suffered substantial losses as a result.  *See Kiken v. Lumber Liquidators Holdings, Inc.*, No. 4:13cv157, 2014 WL 12588686, at \*3 (E.D. Va. May 14, 2014).  Moreover, Shunk is particularly typical of the Class in that he lost money on both IronNet common stock and options.  *See Grad* Compl. ¶1; ECF 27-3 and 27-4 (Shunk certification and loss chart).[4]

Shunk also meets Rule 23's adequacy requirements. Shunk has no interests that are adverse to those of the Class.  Indeed, Shunk's interests are perfectly aligned with the Class' interests of obtaining the maximum recovery for all Class members due to the alleged fraud in the action.  *See Knurr v. Orbital ATK, Inc*., 220 F. Supp. 3d 653, 658 (E.D. Va. 2016).  Shunk has also retained experienced counsel in securities class actions, which further supports his adequacy.

Additionally, Shunk has submitted a declaration that describes his dedication to this Action and to all Class members.  *See* Shunk Decl. ¶7 ("I lost a substantial amount of money in both IronNet common stock and options, which are both covered securities under the complaint in the

---

[4] *Cf. Levy v. Gutierrez*, 14-CV-00443-JL, 2015 WL 13648077 (D.N.H. May 20, 2015) (appointing individual investor with both common stock and options losses over unrelated group with smaller aggregated loss only in common stock).

action, and which both deserve representation. I understand that, if appointed as lead plaintiff, I have a fiduciary duty to strive for the best possible recovery for all Class members. I will certainly strive to my utmost to achieve the best possible outcome for all Class members here and, in light of the massive losses I personally sustained, the Court can be certain that I have every incentive to do so"). Because Shunk has the largest financial interest in this Action and has more than satisfied his *prima facie* Rule 23 requirements, he is the presumptive Lead Plaintiff here.

## II.    THE GROUP DOES NOT COME CLOSE TO PRESENTING THE "PROOF" REQUIRED TO REBUT THE PSLRA'S "STRONG" PRESUMPTION IN FAVOR OF APPOINTING SHUNK

The Group does not provide ***any*** of the requisite "proof" to rebut the "strong" presumption in favor of appointing Shunk as Lead Plaintiff. The Group merely speculates that Shunk is somehow atypical of the Class because he suffered a substantial percentage of his losses in IronNet options. The Group's challenge defies common sense and is exceedingly insufficient. Indeed, there is no basis in the PSLRA to disqualify a movant that suffered losses in two types of covered securities simply because of a contrived imbalance in losses between the two securities. Suffering the largest financial interest, including substantial losses in both common stock and options, makes Shunk the ideal candidate to represent the Class here.

Moreover, it is black letter law that speculation is insufficient to rebut the PSLRA's strong presumption. As a court in this Circuit recently noted, "[a]bsent some 'proof' that [a presumptive lead plaintiff] cannot fulfill its responsibilities, the presumption must stand." *Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG, 2019 WL 1004591, at *9 (D. Md. Feb. 28, 2019). The Group's opposition confirms that no such proof exists. Thus, the "presumption must stand." *Id.*

There is no question that in securities class actions brought on behalf of stock and options purchasers, such as this one, investors who lost most of their money in options can and do serve

in a representative capacity.  Even on motions for class certification, which have a higher bar for typicality and adequacy than the *prima facie* standard at the lead plaintiff stage, courts have agreed. For example, In *Priceline.com*, the defendants argued at class certification that the lead plaintiff (Weiss) who transacted primarily in options was unfit to serve as class representative for a class that included purchasers of common stock.  *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 98 (D. Conn. 2006).  The court rejected that argument and noted that defendants – like the Group here – had raised no specific, non-speculative arguments about Weiss' options trading:

> Defendants argue that Weiss traded almost exclusively in put options for Priceline stock, and that the characteristics of this type of security render his claim atypical of those of the class members such that he would be an inadequate class representative….

> Upon consideration of the nature of options trading in general, and Weiss's explanation of his motive for his trading, the court is satisfied that Weiss's interests, although unique in certain respects because he traded in put options, are sufficiently aligned with those of the class members. Option traders and other traders of securities aside from the shares of stock themselves may use the fraud-on-the-market presumption of reliance absent special circumstances compelling a different result.

*Id*. at 98-99.

As in *Priceline*, the Group here fails to point to any specific, non-speculative evidence about Shunk's options trading that renders him inadequate or atypical – because there is none. The Court here should see through and reject the Group's untenable and opportunistic challenge. *See City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp*., No. 18-CV-3608 (VSB), 2019 WL 364570, at *7 (S.D.N.Y. Jan. 30, 2019) (rejecting arguments for "provid[ing] no evidence to support their claims"). *Cf. In re Arakis Energy Corp. Sec. Litig*., No. 95–CV–3431 (ARR), 1999 WL 1021819, at *6 (E.D.N.Y. Apr. 27, 1999) (typicality requirement satisfied when plaintiff's "cause of action [arose] from the same factual background as the other class members and there [was] no reason to believe that a defense predicated on his purchase of options late in the class period [would] divert the trial from the main issues").

6

*Hall v. Medicis Pharmaceutical Corp.*, No. CV-081821-PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009), is also instructive here. In rejecting an analogous argument against a lead plaintiff movant who purchased and sold put options, the court first found that the opposing movant had failed "to offer any evidence that [the] specific options [were] themselves atypical," and had instead urged the court to adopt the stance "that the claims of all options holders are inherently atypical such that they cannot represent common stockholders." 2009 WL 648626, at *4. Because the movant had failed to offer "specific evidence" related to "the nature of [the specific] options, the history of their purchase and sale, or some other factor made [the presumptive lead plaintiff] inadequate to represent the class," the court held that there was insufficient "proof" to rebut the lead plaintiff presumption. *Id*. at *4; *See also Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928, at *5 (N.D. Cal. Aug. 10, 2005) (seller of call options "may still be entitled to the presumption of reliance if he makes ordinary purchases of common stock and sustains losses on these holdings"); *Nursing Home Pension Fund v. Oracle Corp*., No. C01-00988 MJJ, 2006 WL 8071391, at *8 (N.D. Cal. Dec. 20, 2006) ("Kuehmichel made several ordinary purchases of common stock based on Oracle's alleged false and misleading statements….. Kuemichel is not atypical because of his strategy of selling "call options""").

Here, likewise, Shunk "made…ordinary purchases of common stock" and bought IronNet call options. *Id*. The Group offers no "specific evidence" related to "the nature of [Shunk's] options, the history of their purchase and sale, or some other factor [that makes Shunk] inadequate to represent the class." *Hall*, 2009 WL 648626, at *4. Accordingly, this Court, as the court did in *Hall*, should reject the Group's purely speculative claim that Shunk is atypical. *See id*.; *see also Oracle Corp*., 2006 WL 8071391, at *8.

7

Notably, the Group fails to cite a single case from the Eastern District of Virginia in its opposition brief to support its irrational challenge. And the cases the Group does cite are readily distinguishable from the facts here. Indeed, none rejected a lead plaintiff movant purely based on the movant's percentage of options losses. For example, in *Cook*, 2019 WL 1510894, at *2, the court appointed an institutional investor over an individual where the individual sold both put and call options – which other movants challenged as "self-contradictory" trading. Here, Shunk did not purchase or sell any put options, and there is no institutional investor movant for the Court to even consider – there is only a lawyer-driven, unrelated Group that the PSLRA eschews. Likewise, in *Di Scala v. Proshares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020), the court noted there were questions about whether losses arising from the *sale* of put options would qualify under a class definition of "all investors who *purchased* or otherwise acquired" securities. Emphasis added. This is plainly inapplicable here because Shunk did not sell put options and his purchases of IronNet options are indisputably encompassed by the class definition. The *Di Scala* court also noted that, unlike here, selling put options obligated the movant to purchase shares at a later date at above market prices. *Id*. at *3.

The Group also misplaces reliance on *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, No. 2:12-cv-00042-BLW, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012). First, *Hecla* concerned how to calculate losses from options to determine which movant had the largest financial interest. *Id*. at *3. Here, the Group concedes that Shunk has the largest financial interest and does not dispute how his losses were calculated. Group Br. at 2. Second, the *Hecla* court compared expert submissions with different methodologies for valuing options losses. *Id*. Here, the Group has offered no such evidence. Third, the court noted the institutional investor preference and appointed two institutions over a group of one institution and two individuals that had suffered

8

large option losses.  *Id*. at \*5 n.4.  Fourth, the *Hecla* court held that "[m]uch like comparing apples to oranges, the Court must compare stocks to options because ***both types of securities are essential to this class action*.*"  2012 WL 2872787, at \*4.  Thus, if anything, *Hecla* shows that common stock and options are both "essential" to this Action and, thus, that Shunk is the perfect lead plaintiff to represent all Class members.  *Id.* at \*4.[5]

Finally, the Group also fails to explain why any purported options-related defenses would be unique to Shunk but not affect other members of the Class who suffered losses in options – and flatly ignores that any purported atypicality affecting options trading would affect the Group as much as Shunk since Guthrie also traded in options.

Thus, the Group has not come close to providing any "proof" to rebut Shunk's presumptive lead plaintiff status here.

### III.    BEYOND FAILING TO REBUT THE PRESUMPTION IN FAVOR OF SHUNK, THE IRONNET INVESTOR GROUP HAS NOT EVEN SATISFIED RULE 23

The IronNet Investor Group has failed to rebut Shunk's presumptive lead plaintiff status. At this stage, the Court cannot conduct a beauty contest among the movants, but rather must appoint Shunk as Lead Plaintiff.  *Tchatchou v. India Globalization Capital, Inc*., 8:18-CV-03396-PWG, 2019 WL 1004591, at \*8 (D. Md. Feb. 28, 2019) ("once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job.") (quoting *In re Cendant Corp.*

---

[5] The Group's other citations fare no better.  *See*, *e.g.*, *Patel v. Reata Pharm., Inc*., 549 F. Supp. 3d 559, 566-67 (E.D. Tex. 2021) ("the fact that Massar's losses during the Class Period were based *solely* on option contracts renders Massar atypical of the putative class").

*Litig.*, 264 F.3d 201, 268 (3d Cir. 2001)).  Nevertheless, it bears noting that the lawyer-driven Group has not even satisfied its own Rule 23 requirements, fatally undermining its motion.

Courts routinely reject lawyer-made groups when, like here, they have not demonstrated their adequacy under Rule 23.  The Group – with unrelated members from Texas, North Carolina, and Washington (*see* ECF 25-8 at ¶¶2-4) – has plainly been cobbled together by three different law firms for the sole purpose of aggregating their losses.  This is precisely the type of conduct that the PSLRA seeks to prevent.  *See In re E.Spire Commc'ns, Inc., Sec. Litig*., 231 F.R.D. 207, 212-13 (D. Md. 2000).  "Recognizing this risk and its inconsistency with the PSLRA, courts have held that both the context and the structure of the PSLRA demonstrate that a 'group of persons,' within the meaning of the statute, should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys." *Id*. at 213 (internal quotation omitted).

Highlighting the loose association among its members, the Group's declaration says nothing on key issues such as how the group intends to resolve disagreements or its decision-making process.  *See* ECF 25-8 at 5-9.  Courts have found that such significant omissions fatally undermine a lead plaintiff motion.  *See*, *e.g.*, *In re Cloudera*, 2019 WL 6842021, at *7 (denying lead plaintiff status to group that provided no information about how it would resolve disagreements).  *Compare Ferreira v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020) (finding plaintiff group capable of performing lead plaintiff function where they provided process for decision-making and addressing disagreements).[6]  Accordingly, the Group has not satisfied Rule 23's adequacy requirement.

---

[6] Additionally, the Group requests that the Court appoint three law firms (two law firms as lead counsel and one law firm as liaison counsel) without any explanation as to why this is necessary.

The Court should also disqualify the Group because it misstated its financial interest in its opening papers by omitting Guthrie's ***gains*** in IronNet options.  Courts have repeatedly found a lead plaintiff movant inadequate because of errors in a sworn certification.  *See, e.g., Plaut v. Goldman Sachs Grp., Inc.*, No. 18-cv-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (finding applicant inadequate in light of inadvertent "clerical" errors where losses were misstated); *Li Hong Cheng v. Canada Goose Holdings Inc*., No. 19-CV-8204 (VSB), 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019) ("[c]ertification errors in [applicant's] submissions render [him] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement"); *Bhojwani v. Pistiolis*, No. 06 CIV. 13761 CM NKF, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (even where movant submitted corrected certification, court found the submissions "indicate[] a certain carelessness about detail that undermined the adequacy of the [movant] (and his associated group) as a lead plaintiff").

On July 5, 2022, one day before oppositions came due, the Group submitted an amended certification revealing that Guthrie also traded IronNet options – and made about $9,000 from such trades, which were not originally reflected in the Group's loss chart.  ECF 34-34-2.[7]  The Group's omission of a whole class of securities "that are subject of this action" (*see* ECF 25-2) and the Group's initially inflated loss figure further "render [the Group] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement." *Li Hong Cheng*, 2019 WL 6617981, at *6 n.7. *Cf. Shiring v. Tier Techs.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (denying, in part, motion for class certification because "[p]laintiff's inadvertence or his indifference to the PSLRA's certification

---

This further shows that the Group is not unified and is purely lawyer-driven.  *See In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000).

[7] This $9,000 inflation turned out not to have made a difference because Shunk's loss is so much larger.  But if the figures were close, it could have given the appearance that the IronNet Investor Group had the largest financial interest when it did not.

11

requirements demonstrates a lack of diligence and candor that, in conjunction with his other deficiencies, counsel against a finding of adequacy").

Finally, Guthrie's options *gains* and the Group's opposition, which attacks Shunk purely because of his options trading, has signaled that the Group does not intend to suitably protect the interests of Class members with options. *See* Group Br. at 4 (Group made unfounded claim that the Class was "primarily [] investors who purchased common stock").

## CONCLUSION

For the foregoing reasons, and those given in his opening brief and opposition, Shunk respectfully requests that the Court appoint him as Lead Plaintiff and approve his selection of Bernstein Liebhard as Lead Counsel for the Class and The Kaplan Law Firm, as Local Counsel to the Class, and reject the competing motion of the Group.

Dated: July 11, 2022                         Respectfully submitted,

                                             **THE KAPLAN LAW FIRM**

                                             /s/ Matthew B. Kaplan
                                             Matthew B. Kaplan (VSB # 51027)
                                             THE KAPLAN LAW FIRM
                                             1100 N. Glebe Rd., Ste. 1010
                                             Arlington, VA 22205
                                             Tel: (703) 665-9529
                                             mbkaplan@thekaplanlawfirm.com

                                             *Local Counsel for James Shunk and Proposed*
                                             *Local Counsel for the Proposed Class*

                                             **BERNSTEIN LIEBHARD LLP**
                                             Laurence J. Hasson
                                             Joseph R. Seidman, Jr.
                                             Jeffrey R. McEachern
                                             10 East 40th Street
                                             New York, NY 10016
                                             Telephone: (212) 779-1414
                                             Facsimile: (212) 779-3218
                                             Email:  lhasson@bernlieb.com
                                                     seidman@bernlieb.com
                                                     jmceachern@bernlieb.com

                                             *Counsel for James Shunk and Proposed Lead*
                                             *Counsel for the Proposed Class*

13

CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, I will electronically file the foregoing with the

Clerk of the Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all counsel of record.

Dated: July 11, 2022

/s/ *Matthew B. Kaplan*
Matthew B. Kaplan (VSB # 51027)
THE KAPLAN LAW FIRM
1100 N. Glebe Rd., Ste. 1010
Arlington, VA 22205
Tel: (703) 665-9529
mbkaplan@thekaplanlawfirm.com