IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ADAM GRAD, *on Behalf of Himself and All Others Similarly Situated*, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 1:22-cv-00449 (RDA/JFA) |
| IRONNET, INC., *et al.*, ) ) | CLASS ACTION |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the outstanding Motions to Appoint Counsel and Lead Plaintiff ("Motions"). *See* Dkt. Nos. 19; 23; 26. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions, including the supporting memorandum and related exhibits filed on behalf of Chris Riemer ("Riemer") (Dkt. Nos. 19-22; 31), the supporting memorandum and related exhibits, opposition brief, and reply brief on behalf of Roger Caroway, Shirley Guthrie, and Yong Kim ("CGK") (Dkt. Nos. 24-25; 37; 40), and the supporting memorandum and related exhibits, opposition brief, and reply brief on behalf of James Shunk ("Shunk") (Dkt. Nos. 27; 38; 39), this Court GRANTS Shunk's Motion (Dkt. 26) and DENIES the Motions of both Riemer and CGK (Dkt. Nos. 19; 23) for the reasons that follow.

I. BACKGROUND

The instant Complaint alleges that all Defendants—IronNet, Inc. ("IronNet"), Keith B. Alexander, James C. Gerber, and William E. Welch ("Individual Defendants")—violated § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5. The Complaint also alleges that Individual Defendants violated § 20(a) of the Exchange Act.

This matter arises as a result of Defendants' allegedly false and misleading statements and omissions with respect to all securities publicly offered by IronNet and purchased between September 15, 2021 and December 15, 2021 ("Class Period") by members of the putative class. IronNet is a cyber security services provider headquartered in McLean, Virginia. On August 27, 2021, IronNet merged with a "blank check special purpose" acquisition company ("SPAC"), LGL Systems Acquisition Corp. ("LGL"). As a result of this de-SPAC transaction, IronNet became a publicly traded company on the New York Stock Exchange and issued, among other securities, common shares under the ticker symbol "IRNT."

Ahead of the merger approval, on August 10, 2021, IronNet revised its financial forecasts. But after IronNet began publicly trading its common shares, on September 14, 2021, IronNet issued a press release announcing its quarterly financially results, which fell significantly short of its prior forecasts. Notwithstanding the suboptimal results, IronNet reaffirmed it was "on target" with its "first half guidance" and that "[n]ew customer momentum so far in the second half of [its] fiscal year is strong." Dkt. 1 ¶¶ 20-21. The stock price climbed 38% immediately following that announcement. But on December 15, 2021, after market close, IronNet altered its guidance in new customer acquisition due to unanticipated "government delays in getting funding through to federal budgets." *Id.* ¶ 24. The earnings call that followed revealed that IronNet had fired its Chief Revenue Officer and would reformulate its guidance methodology going forward. On December 16, 2021, the common stock price dropped 31%.

The Complaint alleges that Defendants materially misled public IronNet investors by inflating the price of IronNet securities, issuing false and misleading statements and omitting material facts related to IronNet's adverse business and operations performance.

On April 22, 2022, Plaintiff Adam Grad "Plaintiff" filed the instant Complaint. Dkt. 1. That same day, counsel for Plaintiff caused a notice to be published over *Globe Newswire* pursuant to § 21D(a)(3)(A)(i) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Dkt. 20 at 10. On May 18, 2022, Defendants moved for suspension of their response filing obligations pending the resolution of the appointment of a lead plaintiff and lead counsel in this matter, which this Court granted on May 20, 2022. Dkt. Nos. 12; 13. On June 21, 2022, 60 days from the filing of the original Complaint as required by the PSLRA, this Court received five motions for appointment of lead plaintiff and lead counsel, accompanied by supporting memoranda and exhibits. Dkt. Nos. 15; 16; 19; 23; 26. This Court then issued a scheduling order requiring all responses to the initial motions by July 6, 2022, and all final replies to those responses by July 11, 2022. On July 5, 2022, counsel for Chris Riemer filed a notice acknowledging that Riemer did not appear to have the largest financial interest in the matter. Dkt. 31 at 2. Two of the other parties withdrew their motions. Dkt. Nos. 32; 33. Counsel for CGK also filed a notice of correction as to Shirley Guthrie's loss chart to reflect her options trades made during the Class Period which resulted only in gains, decreasing her aggregate loss amount by $9,020.00. Dkt. 34 at 1. On July 6, 2022, CGK and Shunk each filed opposition briefs. Dkt. Nos. 37-38. On July 11, 2022, CGK and Shunk each filed replies as permitted by this Court's briefing order. Dkt. Nos. 39-40.

## II.  STANDARD OF REVIEW

The PSLRA outlines the relevant procedures to appoint a lead plaintiff in a federal class action. *See* 15 U.S.C. § 78u-4(a)(1). The original lead plaintiff(s) must publish a class action notice "in a widely circulated national business-oriented publication or wire service" within 20 days of the filing of the original complaint. *Id.* § 78u-4(a)(3)(A)(i). Within 90 days of the published notice, the court must determine which of the potential plaintiffs (and derivatively their

3

counsel) is "most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i). In drawing that conclusion, the PSLRA directs courts to presume the most adequate plaintiff is the person or group of persons that (a) has either filed the complaint or made a motion in response to the publication notice; (b) in the court's determination has the "largest financial interest in the relief sought by the class"; and (c) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. *Id.* § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptive most adequate plaintiff (a) "will not fairly and adequately protect the interests of the class" or (b) "is subject to unique defenses" that render such plaintiff incapable of adequate representation. *Id.* § 78u-4(a)(3)(B)(iii)(II).

"Subject to the approval of the court," the most adequate plaintiff shall select and retain counsel to represent the class. *Id.* § 78u-4(a)(3)(B)(v). A court must consider "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class." *In re Mills Corp.*, No. 1:06-cv-77, 2006 WL 2035391, at *3 (E.D. Va. May 30, 2006). Courts retain the additional discretion to consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

### III.  ANALYSIS

#### A.  Lead Plaintiff

The PSLRA directs that the plaintiff with the "largest financial interest in the relief sought by the class" initially is to be considered the lead plaintiff, provided that such plaintiff satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The

parties do not dispute that options securities are covered by the Complaint and therefore are treated in like manner with common stock losses in calculating each applicant's aggregate financial losses. *See* Dkt. 37 at 2 (CGK admitting that Shunk has the largest financial interest); *see also* Dkt. 34 (CGK revising the calculable loss chart to account for option gains). As a result, Shunk's covered losses during the Class Period—$776,722.50—represent the largest financial loss in this matter. Through counsel, Shunk has also moved to be appointed lead plaintiff. Dkt. 26. Therefore, he is the presumptive lead plaintiff so long as he (1) meets the other requirements of Rule 23 and (2) such presumption is not adequately rebutted.[1]

### 1. Whether Shunk Meets the Other Requirements of Rule 23

CGK seeks to overcome the presumption that Shunk is the adequate lead plaintiff by arguing that the disproportionality of his losses as a result of his common and call option holdings makes him an atypical class representative. Interpreting a collection of recent vintage cases stemming from two Southern District of New York cases, CGK advances a rule that if "the overwhelming majority of the movant's losses resulted from options or stock trades" or simply "the majority is from options trades," then the applicant is atypical of the class. Dkt. 37 at 5.

In assessing whether the plaintiff suffering the largest financial loss meets the other requirements of Rule 23, "the candidate must make at least a preliminary showing that it has claims which are typical of those of the putative class and that it has the capacity to provide adequate representation for others." *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999); *see also Patel v. Reata Pharma., Inc.*, 549 F. Supp. 3d 559, 566 (E.D. Tex. 2021) ("[I]t is

---

[1] Of the remaining applicants, CGK incurred aggregate losses of approximately $509,730.77, entirely through losses incurred from trading common stock. Losses among the three members of the CGK were approximately evenly dispersed: Shirley Guthrie ($189,662.17), Dkt. 34-2 at 6, Yong Kim ($162,271.64), Dkt. 25-5 at 2, and Roger Caroway ($157,796.96), Dkt. 25-7 at 2. Reimer incurred aggregate losses of $81,272.00 during the Class Period, representing losses from both call options and common stock. Dkt. 21-1 at 2.

5

sufficient that a lead-plaintiff movant make only a prima facie showing that he or she satisfies the typicality and adequacy requirements of Rule 23."); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("[T]ypicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA."). "A person's claim is typical when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."); *Teran v. Subaye, Inc.*, No. 11 Civ. 2614, 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011) (holding that the "typicality threshold is satisfied" when the applicant's claims "arise from the same conduct from which the other class members' claims and injuries arise"). "[A] person may be an adequate representative of the class where that person (i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *MicroStrategy*, 110 F. Supp. 2d at 435-36.

At this *prima facie* showing stage, Shunk's claims appear mainstream and adequately represent the interests of the class. Appointing optionholders as lead plaintiffs is not an uncommon question. However, courts generally disfavor appointing applicants whose losses are entirely borne out of their options trades—be they selling puts or buying calls—as those claims are considered atypical of a class predominately consisting of common stockholders.[2] But while

---

[2] *See, e.g.*, *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019); *Applestein v. Medivation, Inc.*, No. C 10-00998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010); *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061, 2005 WL 912359, at *5 (S.D.N.Y. Apr.

6

certain optionholder applicants suffering the largest financial losses in the class have confronted difficulties on rebuttable presumption grounds in securing appointment, many others have been appointed.[3]

When an applicant has incurred losses from both the purchase of common stock and call options, such trading behavior is not atypical of the class when the class seeks recovery for all losses related to the securities of the issuer. *See Kiken v. Lumber Liquidators Holdings, Inc.*, 2014 WL 12588686, at **1, 3-4 (E.D. Va. May 14, 2014) (holding that for a class consisting of "all persons or entities who purchased or otherwise acquired [] securities" during the class period, applicants who traded in common stock and call options were not atypical or inadequate representatives of the class); *see also In re Orbital Scis. Corp. Sec. Litig.*, 188 F.R.D. 237, 240 (E.D. Va. 1999) ("Even if the shareholders and the optionholders are not identically situated in every respect, they share a mutual interest in having the Court resolve these questions about whether the [d]efendants made any misstatements or omissions, whether they did so with scienter, and whether the price of [] common stock became artificially inflated as a result."); *but see MicroStrategy*, 110 F. Supp. 2d at 440 (considering optionholder as atypical of the class because

---

19, 2005); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 390-92 (D.N.J. 1998); *Margolis v. Caterpillar, Inc.*, 815 F. Supp. 1150, 1156 (C.D. Ill. 1991); *but see, e.g.*, *In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (concluding that an applicant trading entirely in options may represent a class that includes purchasers of all equity securities).

[3] *See, e.g.*, *Medina v. Clovis Oncology, Inc.*, No. 15-CV-2546, 2016 WL 660133, at *4 (D. Colo. Feb. 18, 2016); *Ash v. PowerSecure Intern., Inc.*, No. 4:14-cv-92-D, 2014 WL 5100607, at *4 (E.D.N.C. Oct. 10, 2014); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011); *Hall v. Medicis Pharm. Corp.*, No. CV08-1821, 2009 WL 648626, at *5 (D. Ariz. Mar. 11, 2009); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 315, 1330-31 (N.D. Ga. 2007); *In re Priceline.com Sec. Litig.*, 236 F.R.D. 89, 99 (D. Conn. 2006); *In re Donnkenny Inc., Sec. Litig.*, 171 F.R.D. 156, 156 (S.D.N.Y. 1997); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D. Cal. 1991); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990); *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989)).

the applicant was a hedge fund that "engages in transactions far beyond the scope of what a typical investor contemplates").

Shunk's trading behavior is not atypical of the class. Shunk incurred $64,016.00 in losses from the sale of common stock purchased during the Class Period. Dkt. 27-4 at 1. Moreover, the losses incurred from his sale of call options resulted from the same motivation as the sales made by common stockholders.[4] *See Deutchman*, 132 F.R.D. at 371 (holding that call option purchasers "can invoke the fraud on the market theory" because "both call option purchasers and stock purchasers hope to profit from an *increase* in the market price of the underlying security"); *see also Nursing Home Pension Fund v. Oracle Corp.*, No. C-01-00988, 2006 WL 8071391, at *8 (N.D. Cal. Dec. 20, 2006) (finding the sale of call options in conjunction with the purchase of common stock as not atypical of the class).

Shunk has also preliminarily demonstrated himself to "not have interests that are adverse to the interests of the class." *MicroStrategy*, 110 F. Supp. 2d at 435-36. Not only are the purchase and sale motives aligned between call optionholders and common stockholders, but the specific interests of the members of this class also align with Shunk's. Ten percent of Riemer's losses, for example, resulted from either his call options having been sold or expired. Dkt. 21-1 at 2; *see also Adobe*, 139 F.R.D. at 155 (finding the typicality requirement satisfied where "the value of options is directly related to the value of common stock" and the defendants "had reason to expect that option traders would rely on their alleged misrepresentations"). Shunk has also proposed lead and

---

[4] Unsurprisingly, Shirley Guthrie, a member of the CGK applicants, purchased call options during the Class Period which resulted in no losses as they either were sold or expired in the money prior to the end of the Class Period. Dkt. 34-2 at 5-6. The only difference between these options and the options Shunk purchased were the relative strike prices and duration of each contract, explaining why Shunk incurred losses while Guthrie did not. Shunk's call option transactions appear even more typical of the class given Guthrie's prior transaction history.

liaison counsel with a respectable track record handling securities and other complex civil litigation matters and, through briefing, has not demonstrated any questions as to his competency to serve as class representative. *MicroStrategy*, 110 F. Supp. 2d at 435-36. Rather, given the sheer magnitude of his losses, "there is no reason to believe that [he or his] counsel will not vigorously prosecute this action." *Medina*, 2016 WL 660133, at *4.

2. Whether Shunk's Presumptive Lead Plaintiff Status is Rebutted

CGK relies on the determinations from sister districts in *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) and *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) to assert that when losses from options exceed losses from common shares, the applicant's claims are atypical of a class whose losses stem from trading the issuer's securities. And while it is true that the courts in *Di Scala* and *Cook* rejected appointing a lead-plaintiff with 82% and 61% of option losses, respectively, both cases are distinguishable from the instant case. In *Di Scala*, the optionholding applicant incurred losses from the sale of put options as opposed to the purchase of call options.[5] As such, the court reckoned whether selling contracts effectively betting against a certain increase in the issuer's stock price over a certain period of time would "qualify him as [a] member of a class of all investors who *purchased or otherwise acquired*" the issuer's securities during the Class Period. 2020 WL 7698321, at *4 (internal quotations omitted). Whereas here, the original Complaint only considers "economic loss to investors who had purchased" the IronNet's securities during the Class Period. Dkt. 1 ¶¶ 5, 28, 37, 52. The defined putative class in the Complaint here is even narrower than in *Di Scala*; and Shunk engaged in no

---

[5] For a primer on the mechanics of a put option and its sale, *see Priceline.com*, 236 F.R.D. at 98-99.

sales of put options. Rather, Shunk's purchase of call options convincingly aligns with the investment calculus of those who purchase common shares.

*Cook* also fails to undercut Shunk's presumptive lead-plaintiff status. There, the optionholder sold both put and call options, reflecting a unique trading strategy atypical of the overall class. *Cook*, 2019 WL 1510894, at *2 (noting the applicant's "self-contradictory and unusual trading patterns"). And unlike here, the competing applicant was an institutional investor which further compelled the court to forego appointing the optionholder applicant as lead plaintiff. *Id.* at *1 ("There is, therefore, a preference for the appointment of an institutional lead plaintiff, assuming all else is in equipoise."); *see id.* at *2 (noting that the optionholder applicant was an individual and not an institutional investor).

Even more, the reasoning upon which *Di Scala* and *Cook* rely effectively eschews the PSLRA's explicit directive that any rebuttal be made "upon *proof* by a member of the purported plaintiff class" that the presumptive most adequate plaintiff (a) "will not fairly and adequately protect the interests of the class" or (b) "is subject to unique defenses" that render such plaintiff incapable of adequate representation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). Instead, *Di Scala* and *Cook* speculate that the sheer magnitude of losses incurred from disproportionate options trading "very likely would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates" and the applicant "could subject the class to unique defenses, causing unnecessary conflict." *Di Scala*, 2020 WL 7698321, at *4 (quoting *Allergan*, 2019 WL 1510894, at *2).

Significantly, this Court fails to see how such risks emerge when the losses sustained by other members of the putative class occurred in the same manner as the presumptive lead plaintiff's. Dkt. 21-2 at 2 (revealing call option losses from Riemer who has applied separately

10

for lead-plaintiff status); Dkt. 31 at 2 (despite recognizing he has not sustained the largest financial loss, Riemer reserves his "right to share in any recovery obtained for the benefit of Class members"). The "factual issues" undergirding the options losses discovery process would prove essential to awarding those class members, like Riemer, who have sustained losses from their optionholdings. Considering how many courts have comfortably appointed optionholders who also suffered losses from common stock, including other courts sitting in the Southern District of New York, *see, e.g.*, *Goldstein*, 827 F. Supp. 2d at 355, this Court also doubts that the risks identified in *Cook* and reiterated in *Di Scala* suddenly become problematic when an applicant's losses in options crosses the Rubicon from 49.9% of its aggregate losses to 50.1%. Indeed, *Allergan* conflicts directly with the decision of a district court sitting in this Circuit.[6] *See* Dkt. 13-4 at 2, *Ash v. Powersecure Int'l Inc.*, Dkt. No. 4:14-cv-00092 (E.D.N.C. July 22, 2014); *Ash*, 2014 WL 5100607, at *4 (appointing a lead plaintiff that sustained millions in losses of which more than 50% were attributable to having sold put options).

The *Di Scala* and *Cook* progeny also fail to persuade this Court. For instance, in *Patel*, the court determined that while the optionholder applicant incurred the largest financial loss, his losses during the class period "were based solely on option contracts," rendering him atypical of the class. 549 F. Supp. 3d at 567. The *Patel* court also added that the optionholder's presumptive lead status was rebuttable because his "trading practices subject him to 'unique defenses' concerning damages." *Id.* at 568-69 (citing *Gelt Trading v. Co-Diagnostics, Inc.*, No. 2:20-cv-00368, 2021

---

[6] The Southern District of New York held in *Andrada* that an applicant who only incurred losses from options was not qualified to be appointed lead plaintiff, discrediting that applicant's misguided reliance on this Circuit's decisions in *MicroStrategy* and *Orbital*. 2005 WL 912359, at *5 n.1. But as that footnote correctly notes, neither of the courts in *MicroStrategy* and *Orbital* decided the express question before this Court; rather, those courts held that the creation of a subclass for optionholders was unnecessary given that the lead plaintiff's losses incurred from the sale of common stock adequately represented the interests of the optionholders.

11

WL 913934, at *5 (D. Utah Mar. 10, 2021)).  In *Gelt*, the presumptive lead plaintiffs also had not sustained any common stock losses.  Tracing the chain of precedent, the *Gelt* decision relied in turn on *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, No. 2:12-cv-42, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012).  That court considered a unique valuation contest related to an applicant's claimed losses from options and the resulting financial loss calculation.  *Hecla* did not address optionholders who also sustained common stock losses and their capacity to typically and adequately represent the class.  Tellingly, only two courts have cited *Hecla* with respect to the rebuttable presumption unique defense damages claim—*Patel* and *Gelt*.  Both cases involved a presumptive lead plaintiff that sustained the entirety of its losses from option transactions.  Here, Shunk amassed nearly $65,000.00 in losses from sale of his common stock purchased during the Class Period, making him typical to and representative of the average class member.

      CGK offers no "specific evidence" which suggests that "the nature of [Shunk's] options, the history of their purchase and sale, or some other factor [makes Shunk] inadequate to represent the class."  *Hall*, 2009 WL 648626, at *4.  Without such hard "proof" required by the PSLRA, this Court will not discount the high burden of proof that challengers must overcome to successfully rebut the lead plaintiff presumption.  *Tchatchou v. India Globalization Cap., Inc.*, No. 8:18-cv-3396, 2019 WL 1004591, at *8 (D. Md. Feb. 28, 2019) ("[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job."); *see also In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2006) (rejecting a challenge to a presumptive lead-plaintiff because the challengers "offer[ed] no proof" of how potential conflicts would become

actual conflicts and because their arguments were "too speculative and hypothetical to rebut the presumption"). Given that no other applicant has presented any specific evidence that Shunk's trading patterns were atypical or that Shunk's interests were adverse to the interests of the class, Shunk has satisfied the necessary showing that his service as a lead plaintiff meets the typicality and adequacy requirements of Rule 23.

### B. Lead Counsel

Shunk seeks to appoint Bernstein Liebhard LLP ("Bernstein") as lead counsel and The Kaplan Law Firm ("Kaplan") as liaison counsel. A lead plaintiff's selection of counsel is subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). There is "a strong presumption in favor of approving a properly-selected lead plaintiff[']s decisions as to counsel selection and counsel retention." *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001). "In determining whether to grant such approval, the Court must consider: (1) 'the work counsel has done in identifying or investigating potential claims in the action'; (2) 'counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action'; (3) 'counsel's knowledge of the applicable law'; (4) 'the resources that counsel will commit to representing the class'; and (5) 'any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.'" *Kiken*, 2014 WL 12588686, at *4 (citing Fed. R. Civ. P. 23(g)(1)).

Here, Bernstein and Kaplan have filed extensive briefings and supporting documentation in this matter. They have provided evidence of substantial experience in securities litigation and other complex civil litigation matters. Dkt. Nos. 27-5; 27-6. And while Kaplan's expertise does not appear to focus entirely on securities litigation, its principal attorney has significant prior experience in litigating securities cases. Dkt. 27-6. Considering their combined expertise and already demonstrated commitment to this matter through its thoughtful briefing, this Court will

13

permit the appointment of Bernstein as Lead Counsel and Kaplan as Liaison Counsel in this matter. This position of trust that this Court has placed with counsel comes with an expectation of the highest standards of professionalism and effective advocacy.

## IV.  CONCLUSION

Accordingly, it is hereby ORDERED that the Motion to be appointed as Lead Plaintiff by James Shunk (Dkt. 26) is GRANTED; and it is

FURTHER ORDERED that the remaining motions by Riemer (Dkt. 19) and CGK (Dkt. 23) are DENIED; and it is

FURTHER ORDERED that James Shunk is APPOINTED to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, in the above-captioned action; and it is

FURTHER ORDERED that James Shunk's selection of Lead Counsel is APPROVED, and Bernstein Liebhard LLP ("Bernstein Liebhard") is APPOINTED to serve as Lead Counsel for the class; and it is

FURTHER ORDERED that James Shunk's selection of Liaison Counsel is APPROVED, and The Kaplan Law Firm ("Kaplan Law") is APPOINTED to serve as Liaison Counsel for the class; and it is

FURTHER ORDERED that pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, any pending subsequently filed, removed, or transferred actions that are related to the claims asserted in the above-captioned action are consolidated for all purposes; and it is

FURTHER ORDERED that this action shall bear the caption "*In re IronNet, Inc. Securities Litigation*" and shall be maintained under master file number No. 1:22-cv-00449-RDA-JFA; and it is

FURTHER ORDERED that within fourteen (14) days of this Order and Opinion, counsel for Lead Plaintiff and Defendants will submit a proposed schedule for the filing of an amended complaint and Defendants' responses thereto.

The Clerk is directed to forward copies of this Order to counsel of record and reflect the aforementioned updates to the docket, including making James Shunk a Plaintiff and revising the docket caption.

It is SO ORDERED.

Alexandria, Virginia
July 15, 2022

/s/ *(signature)*
Rossie D. Alston, Jr.
United States District Judge