# EXHIBIT 10

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## SCHEDULE 13D

Under the Securities Exchange Act of 1934
(Amendment No. ___)*

# IronNet, Inc.
(Name of Issuer)

Common Stock, $0.0001 par value per share
(Title of Class of Securities)

46323Q105
(CUSIP Number)

Keith B. Alexander
c/o IronNet, Inc.
7900 Tysons One Place, Suite 400
McLean, VA 22102
443-300-6761
(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)

August 26, 2021
(Date of Event Which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§ 240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box. ☐

**Note:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See Section 240.13d-7 for other parties to whom copies are to be sent.

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934, as amended ("*Exchange Act*") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

| 1. | Names of Reporting Persons. Keith B. Alexander |
|---|---|
| 2. | Check the Appropriate Box if a Member of a Group (See Instructions) <br> (a) ☐ (b) ☐ |
| 3. | SEC Use Only |
| 4. | Source of Funds (See Instructions) <br> OO |
| 5. | Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) <br> ☐ |
| 6. | Citizenship or Place of Organization <br> United States |

| Number of Shares Beneficially Owned by Each Reporting Person With | 7. | Sole Voting Power <br> 11,370,495 |
|---|---|---|
| | 8. | Shared Voting Power <br> 0 |
| | 9. | Sole Dispositive Power <br> 11,370,495 |
| | 10. | Shared Dispositive Power |

| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person <br> 11,370,495 |
|---|---|
| 12. | Check if the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) <br> ☐ |
| 13. | Percent of Class Represented by Amount in Row (11) <br> 13.5%(1) |
| 14. | Type of Reporting Person (See Instructions) <br> IN |

(1) This percentage is calculated based upon 84,423,567 shares outstanding as of August 26, 2021 following consummation of the Business Combination (as defined below), as reported in the Issuer's Current Report on Form 8-K filed with the Securities and Exchange Commission (the "*SEC*") on September 1, 2021.

**Item 1. Security and Issuer**

(a) This statement on Schedule 13D relates to the common stock, par value $0.0001 per share ("**Common Stock**"), of IronNet, Inc., a Delaware corporation (the "**Issuer**").

(b) The principal executive offices of the Issuer are located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

**Item 2. Identity and Background**

(a) Keith B. Alexander
(b) The business address of the Reporting Person is c/o IronNet, Inc., 7900 Tysons One Place, Suite 400, McLean, VA 22102.
(c) The Reporting Person is Co-Chief Executive Officer, President and Chairman of the Issuer.
(d) During the last five years, the Reporting Person has not been convicted in any criminal proceeding (excluding traffic violations or similar misdemeanors).
(e) During the last five years, the Reporting Person has not been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction resulting in such person being subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.
(f) The Reporting Person is a citizen of the United States.

**Item 3. Source and Amount of Funds or Other Consideration**

The Reporting Person acquired 11,370,495 shares (the "**Merger Shares**") pursuant to the Agreement and Plan of Reorganization and Merger, dated as of March 15, 2021, as amended by Amendment No. 1 to Agreement and Plan of Reorganization and Merger, dated as of August 6, 2021 (as amended, the "**Merger Agreement**"), by and among LGL Systems Acquisition Corp. ("**LGL**"), LGL Systems Merger Sub Inc., a Delaware corporation and wholly owned subsidiary of LGL, and IronNet Cybersecurity, Inc. ("**Legacy IronNet**"), a Delaware corporation (the "**Business Combination**"). Following the consummation of the Business Combination on August 26, 2021 (the "**Closing Date**"), LGL changed its name to IronNet, Inc.

In addition, in accordance with the Merger Agreement, the Reporting Person may also receive, as additional merger consideration, 160,154 shares of the Issuer's Common Stock if the volume weighted average share price of the Issuer's Common Stock equals or exceeds $13.00 for ten consecutive days during the two year period following the Closing Date. The Reporting Person's right to receive the additional shares became fixed and irrevocable on the Closing Date.

**Item 4. Purpose of Transaction**

The Reporting Person has acquired, and holds, the shares of Common Stock reported herein for investment purposes. The Reporting Person may acquire additional securities of the Issuer, depending on market indicators and the business performance of the Issuer, but does not currently plan to purchase a number of shares that would result in a substantial change in the beneficial ownership of the Reporting Person or his ability to influence control of the Issuer.

Other than as described above, and except that the Reporting Person may, from time to time or at any time, subject to market conditions and other factors, purchase additional shares of Common Stock in the open market, in privately negotiated transactions or otherwise, or sell at any time all or a portion of the shares of Common Stock now owned or hereafter acquired by him to one or more purchasers or pursuant to a trading plan adopted pursuant to Rule 10b5-1 of the Exchange Act as of the date of this Schedule 13D, the Reporting Person does not have any present plans which relate to or would result in:

(i) the acquisition by any person of additional securities of the Issuer, or the disposition of securities of the Issuer;
(ii) an extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the Issuer or any of its subsidiaries;
(iii) a sale or transfer of a material amount of assets of the Issuer or any of its subsidiaries;

(iv) any change in the present board of directors or management of the Issuer, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board;
(v) any material change in the present capitalization or dividend policy of the Issuer;
(vi) any other material change in the Issuer's business or corporate structure including but not limited to, if the Issuer is a registered closed-end investment company, any plans or proposals to make any changes in its investment policy for which a vote is required by Section 13 of the Investment Company Act of 1940;
(vii) changes in the Issuer's charter, bylaws or instruments corresponding thereto or other actions which may impede the acquisition of control of the Issuer by any person;
(viii) causing a class of securities of the Issuer to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association;
(ix) a class of equity securities of the Issuer becoming eligible for termination of registration pursuant to Section 12(g)(4) of the Act; or
(x) any action similar to any of those enumerated above.

**Item 5. Interest in Securities of the Issuer**

(a) The Reporting Person beneficially owns 11,370,495 shares of Common Stock of the Issuer, which represents 13.5% of the Issuer's Common Stock outstanding as of August 26, 2021, based on 84,423,567 shares outstanding as of August 26, 2021, as reported in the Issuer's Current Report on Form 8-K filed with the SEC on September 1, 2021. In addition, in accordance with the Merger Agreement, the Reporting Person may also receive, as additional merger consideration, 160,154 shares of the Issuer's Common Stock if the volume weighted average share price of the Issuer's Common Stock equals or exceeds $13.00 for ten consecutive days during the two year period following the Closing Date. The Reporting Person's right to receive the additional shares became fixed and irrevocable on the Closing Date.
(b) The Reporting Person has the sole power to vote or to direct the vote, to dispose or to direct the disposition of all of the 11,370,495 shares of Common Stock of the Issuer currently held by him.
(c) Except as described in this Schedule 13D, the Reporting Person has not engaged in any transactions in the Issuer's Common Stock in the past sixty days.
(d) To the knowledge of the Reporting Person, no other person has the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, the shares of Common Stock beneficially owned by the Reporting Person.
(e) Not applicable.

**Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer**

*Lock-up Agreement*

On March 15, 2021, certain stockholders of the Issuer, including the Reporting Person, entered into an agreement with respect to the Issuer's Common Stock, through the date that is 180 days after the closing of the Business Combination (the **"Lock-Up Agreement"**) providing that they will not, subject to certain exceptions and early release provisions, (i) sell, offer to sell, contract or agree to sell, hypothecate, pledge, grant any option to purchase or otherwise dispose of or agree to dispose of, directly or indirectly, or establish or increase a put equivalent position or liquidate or decrease a call equivalent position within the meaning of Section 16 of the Securities Exchange Act of 1934, as amended, and the rules and regulations of the SEC promulgated thereunder, with respect to any shares of Issuer Common Stock held by them (such securities, collectively, the "**Lock-Up Securities**"), (ii) enter into any swap or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any of the Lock-Up Securities, in cash or otherwise, or (iii) publicly announce any intention to effect any transaction specified in clause (i) or (ii); *provided*, however, that the Reporting Person was granted relief from the restrictions of the Lock-Up Agreement to sell up to an aggregate of 568,525 shares of Issuer Common Stock, with such shares eligible for sale upon the effectiveness of the Resale Registration Statement described below, subject to compliance with applicable securities laws.

*Registration Rights Agreement*

On August 26, 2021, certain stockholders of Legacy IronNet and the Issuer, including the Reporting Person (together, the "**Reg Rights Holders**"), entered into the Amended and Restated Registration Rights Agreement (the "**Registration Rights Agreement**"), pursuant to which the Issuer agreed that, within 30 days after the Closing Date, the Issuer will file with the SEC a registration statement registering the resale of certain securities held by or issuable to the Reg Rights Holders (the "**Resale Registration Statement**"), and the Issuer shall use commercially reasonable efforts to have the Resale Registration Statement declared effective as soon as practicable after the filing thereof. Parties subject to the Registration Rights Agreement are entitled to customary "piggyback" registration rights. The Registration Rights Agreement also provides that the Issuer will pay certain expenses relating to such registrations and indemnify the stockholders against certain liabilities.

The foregoing descriptions of the Lock-Up Agreement and Registration Rights Agreement do not purport to be complete, and are qualified in their entirety by reference to the text of such agreements (or the forms thereof). Such agreements (or the forms thereof) are attached hereto as exhibits and are incorporated by reference herein. Other than as described in this Schedule 13D, to the knowledge of the Reporting Person, there are no other contracts, arrangements, understandings or relationships (legal or otherwise) among the persons named in Item 2 and between such persons and any person with respect to any securities of the Issuer.

**Item 7. Material to be Filed as Exhibits**

| | Description | Schedule / Form | File No. | Exhibit | Filing Date |
|---|---|---|---|---|---|
| | | **Incorporated by Reference** | | | |
| A. | Form of Lock-up Agreement* | | | | |
| B. | Amended and Restated Registration Rights Agreement | 8-K | 001-39125 | 10.2 | 9/1/21 |

*Filed herewith.

**SIGNATURE**

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

Dated: September 7, 2021

/s/ Keith B. Alexander
**KEITH B. ALEXANDER**

The original statement shall be signed by each person on whose behalf the statement is filed or his authorized representative. If the statement is signed on behalf of a person by his authorized representative (other than an executive officer or general partner of the filing person), evidence of the representative's authority to sign on behalf of such person shall be filed with the statement: provided, however, that a power of attorney for this purpose which is already on file with the Commission may be incorporated by reference. The name and any title of each person who signs the statement shall be typed or printed beneath his signature.

**Attention: Intentional misstatements or omissions of fact constitute Federal criminal violations (See 18 U.S.C. 1001)**

Form of Lock-up Agreement

March 15, 2021

LGL Systems Acquisition Corp.
165 W. Liberty St., Suite 220
Reno, NV 89501

Ladies and Gentlemen:

   This Lock-Up agreement (this "Agreement") is entered into in connection with, and conditioned upon the consummation of the transactions contemplated by, that certain Agreement and Plan of Merger (the "Merger Agreement") by and among LGL Systems Acquisition Corp., a Delaware corporation ("LGL"), LGL Systems Merger Sub Inc., a Delaware corporation ("LGL Sub"), and IronNet Cybersecurity, Inc., a Delaware corporation ("IronNet"), dated as of March 15, 2021. Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Merger Agreement.

   1. As a condition to the obligations of LGL, LGL Sub and IronNet to consummate the Merger, subject to the exceptions set forth herein, the undersigned hereby agree that, with respect to the Acquiror Common Stock, from the date hereof through the date that is 180 days after the Closing Date, and with respect to the Acquiror Warrants, including any Acquiror Common Stock issuable upon exercise of the Acquiror Warrants (the "Warrant Stock"), from the date hereof until thirty (30) days after the Closing Date (each period, as applicable, the "Lock-Up Period"), the undersigned will not, without the prior written consent of the board of directors of LGL: (i) sell, offer to sell, contract or agree to sell, hypothecate, pledge, grant any option to purchase or otherwise dispose of or agree to dispose of, directly or indirectly, or establish or increase a put equivalent position or liquidate or decrease a call equivalent position within the meaning of Section 16 of the Securities Exchange Act of 1934, as amended, and the rules and regulations of the Securities and Exchange Commission promulgated thereunder (the "Exchange Act"), with respect to any shares of Acquiror Common Stock, Acquiror Warrants or Warrant Stock, as applicable, held by the undersigned (such securities, collectively, the "Lock-Up Securities"), (ii) enter into any swap or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any of the Lock-Up Securities, in cash or otherwise, or (iii) publicly announce any intention to effect any transaction specified in clause (i) or (ii) (any of the foregoing described in clauses (i), (ii) or (iii), a "Prohibited Transfer"). Notwithstanding the foregoing, the shares of Acquiror Common Stock held by the undersigned shall be subject to early release from the restrictions hereunder (and the Lock-Up Period with respect to the Acquiror Common Stock shall be deemed to have expired with respect to such Acquiror Common Stock) if and to the extent that the following occurs after the Closing: (i) if the closing price of the Acquiror Common Stock on the principal securities exchange or securities market on which the Acquiror Common Stock is then traded (the "Closing Stock Price") equals or exceeds $12.00 per share (as adjusted for stock splits, stock dividends, reorganizations, recapitalizations and the like) for any twenty (20) days on which national stock exchanges are open for trading (each such day, a "Trading Day") within any thirty (30) Trading Day period beginning one hundred and fifty (150) Trading Days after the Closing or (ii) the date on which LGL completes a liquidation, merger, capital stock exchange or other similar transaction that results in all of LGL's

stockholders having the right to exchange their shares of common stock for cash, securities or other property. Furthermore, five percent (5%) of the shares of Acquiror Common Stock held by the undersigned as of the Closing Date shall be subject to early release from the restrictions hereunder (and the Lock-Up Period with respect to the Acquiror Common Stock shall be deemed to have expired with respect to such Acquiror Common Stock) upon the effectiveness of the Form S-1 Shelf (as such term is defined in the Registration Rights Agreement to be entered into in connection with the Merger Agreement).

2. The undersigned hereby (a) authorizes LGL during the applicable Lock-Up Period to cause its transfer agent for the applicable Lock-Up Securities to decline to transfer, and to note stop transfer restrictions on the stock register and other records relating to, such Lock-Up Securities for which the undersigned is the record holder and, (b) in the case of Lock-Up Securities for which the undersigned is the beneficial but not the record holder, agrees during the applicable Lock-Up Period to cause the record holder to cause the relevant transfer agent to decline to transfer, and to note stop transfer restrictions on the stock register and other records relating to, such Lock- Up Securities, in each case of clauses (a) and (b), if such transfer would constitute a violation or breach of this Agreement. LGL agrees to instruct its transfer agent to remove any stop transfer restrictions on the stock register and other records related to the applicable Lock-Up Securities promptly upon the expiration of the applicable Lock-Up Period. If any Prohibited Transfer is made or attempted contrary to the provisions of this Agreement, such purported Prohibited Transfer shall be null and void ab initio.

3. During the applicable Lock-Up Period, each certificate evidencing any Lock-Up Securities shall be stamped or otherwise imprinted with a legend in substantially the following form, in addition to any other applicable legends:

"THE SECURITIES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO RESTRICTIONS ON TRANSFER SET FORTH IN A LOCK-UP AGREEMENT, DATED AS OF MARCH 15, 2021, BY AND AMONG LGL SYSTEMS ACQUISITION CORP. ("LGL") AND THE SECURITY HOLDER NAMED THEREIN, AS AMENDED. A COPY OF SUCH LOCK-UP AGREEMENT WILL BE FURNISHED WITHOUT CHARGE BY THE COMPANY TO THE HOLDER HEREOF UPON WRITTEN REQUEST."

4. Notwithstanding the foregoing, the undersigned may sell or otherwise transfer Lock-Up Securities during the undersigned's lifetime or on death (or, if the undersigned is not a natural person, during its existence): (i) if the undersigned is not a natural person, to its direct or indirect equity holders or to any of its other Affiliates, (ii) to the immediate family members (including spouses, domestic partners, lineal descendants and ascendants (including adopted and step children and parents of such person)), brothers and sisters (including half-sibling and step-siblings) of the undersigned or the undersigned's spouse or siblings (collectively, "Family Members"), (iii) to a family trust, foundation or partnership established for the exclusive benefit of the undersigned, its equity holders or any of their respective Family Members, (iv) pursuant to a court order or settlement agreement related to the distribution of assets in connection with the dissolution of marriage or civil union; (v) to a charitable foundation controlled by the undersigned, its equityholders or any of their respective Family Members; (vi) as a bona fide gift; (vii) by will or intestate succession upon the death of the undersigned; (viii) as security or collateral in

connection any borrowing or the incurrence of indebtedness by the undersigned; (ix) pursuant to a bona fide third-party tender offer, merger, stock sale, recapitalization, consolidation or other transaction involving a Change in Control (as defined below) of LGL, provided that in the event that such tender offer, merger, recapitalization, consolidation or other such transaction is not completed, the Lock-Up Shares shall remain subject to this Agreement; "Change in Control" means the transfer (whether by tender offer, merger, stock purchase, consolidation or other similar transaction), after the Closing Date, in one transaction or a series of related transactions, to a person or group of affiliated persons of LGL's voting securities if, after such transfer, such person or group of affiliated persons would hold more than 50% of outstanding voting securities of LGL (or surviving entity) or would otherwise have the power to control the board of directors of LGL; (x) pursuant to the establishment of a trading plan pursuant to Rule 10b5-1 promulgated under the Exchange Act, provided that such plan prohibits the transfer of Lock- Up Shares during the Lock- Up Period; (xi) acquired as part of the PIPE Investments or issued in exchange for, or on conversion or exercise of, any securities issued as part of the PIPE Investments; (xii) acquired in open market transactions after the Closing Date; (xiii) acquired upon the exercise of stock options or warrants to purchase shares of Acquiror Common Stock or the vesting of stock awards of Acquiror Common Stock and any related transfer of Acquiror Common Stock to the Company in connection therewith (1) deemed to occur upon the "cashless" or "net" exercise of such options or warrants or (2) for the purpose of paying the exercise price of such options or warrants or for paying taxes due as a result of the exercise of such options or warrants, the vesting of such options, warrants or stock awards, or as a result of the vesting of such shares of Acquiror Common Stock, it being understood that all shares of Acquiror Common Stock received upon such exercise, vesting or transfer will remain subject to the restrictions of this Agreement during the Lock-Up Period; and (xiv) to LGL pursuant to any contractual arrangement in effect at the Closing Date that provides for the repurchase by LGL or forfeiture of Acquiror Common Stock or other securities convertible into or exercisable or exchangeable for Acquiror Common Stock in connection with the termination of the holder's service to LGL; provided, however, that in the case of clauses (i) though (ix) above, any such sale or transfer shall be conditioned upon entry by such transferees into a written agreement, addressed to LGL, agreeing to be bound by these transfer restrictions and the other terms and conditions of this Agreement. For the avoidance of doubt, the undersigned shall retain all of its rights as a shareholder of LGL with respect to the Lock-Up Securities during the Lock-Up Period, including without limitation the right to vote any Lock-Up Securities that are entitled to vote and the right to receive any dividends or distributions in respect of such Lock-Up Securities.

5. The undersigned hereby represents and warrants that the undersigned has full power and authority to enter into this Agreement and that this Agreement constitutes the legal, valid and binding obligation of the undersigned, enforceable in accordance with its terms. Upon request, the undersigned will execute any additional documents reasonably necessary to give effect to the terms and conditions of this Agreement.

6. This Agreement constitutes the entire agreement and understanding of the parties hereto in respect of the subject matter hereof and supersedes all prior understandings, agreements, or representations by or among the parties hereto, written or oral, to the extent they relate in any way to the subject matter hereof; provided, however, that the foregoing shall not affect the rights and obligations of the parties under the Merger Agreement or any documents related thereto, including the Registration Rights Agreement. This Agreement may not be changed, amended, modified or waived as to any particular provision, except by a written instrument executed by all parties hereto.

7. Subject to Section 3 hereof, no party hereto may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written consent of the other party. Any purported assignment in violation of this paragraph shall be void and ineffectual and shall not operate to transfer or assign any interest or title to the purported assignee. This Agreement shall be binding upon and inure to the benefit of the undersigned and its successors and assigns. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any facsimile or .pdf copies hereof or signatures hereon shall, for all purposes, be deemed originals.

8. Notwithstanding anything to the contrary contained herein, in the event that the Merger Agreement is terminated in accordance with its terms prior to the Closing Date, this Agreement and all rights and obligations of the parties hereunder shall automatically terminate and be of no further force or effect.

9. This Agreement, and all claims or causes of action based upon, arising out of, or related to this Agreement or the transactions contemplated hereby, shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to principles or rules of conflict of laws to the extent such principles or rules would require or permit the application of laws of another jurisdiction.

10. Any Action based upon, arising out of or related to this Agreement or the transactions contemplated hereby may be brought in federal and state courts located in the State of Delaware, and each of the parties hereto irrevocably submits to the exclusive jurisdiction of each such court in any such Action, waives any objection it may now or hereafter have to personal jurisdiction, venue or to convenience of forum, agrees that all claims in respect of the Action shall be heard and determined only in any such court, and agrees not to bring any Action arising out of or relating to this Agreement or the transactions contemplated hereby in any other court. Nothing herein contained shall be deemed to affect the right of any party hereto to serve process in any manner permitted by Law or to commence legal proceedings or otherwise proceed against any other party hereto in any other jurisdiction, in each case, to enforce judgments obtained in any Action brought pursuant to this section. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11. Any notice, consent or request to be given in connection with any of the terms or provisions of this Agreement shall be completed in accordance with Section 5.01 of the Registration Rights Agreement.

[*Signature on the following page*]

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first written above.

**LGL**:
LGL Systems Acquisition Corp.,
a Delaware corporation

By: _____
    Name:
    Title:

**Holder:**

Name of Holder:

By: _____
Name:
Title:

***Shares of Acquiror Common Stock to be received in the Merger:***

Shares of Acquiror Common Stock:

***Address for Notice:***
Address: Facsimile No.: _____
Telephone No.: _____

Email:

*{Signature Page to Lock-Up Agreement}*