**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| *In re IronNet, Inc. Securities Litigation* | Case No. 1:22-cv-00449-RDA-JFA |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND AUTHORIZATION TO PROVIDE NOTICE TO
THE CLASS AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

I.  THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT ........................................................................................5

II. Notice Is Warranted as the Settlement Is Fair, Reasonable and Adequate Pursuant to Rule 23(**e**)(2) ...............................................................................7

A.  Lead Plaintiff and Lead Counsel Adequately Represented the Class ..................................7

B.  The Settlement Is the Result of Arm's-Length Negotiations ...............................................8

C.  The Relief Provided by the Settlement Is More Than Adequate ........................................9

    1.  The Settlement Provides An Excellent Recovery for the Class ...........................9

    2.  Plaintiffs Would Face Significant Costs, Risks, And Delays If They Continued To Prosecute This Case .......................................................................10

    3.  The Proposed Process for Distributing Relief to the Class is Effective ..............12

    4.  The Anticipated Attorney's Fees and Expenses Are Reasonable ........................14

D.  Class Members Are Treated Equitably Relative to One Another .....................................15

III. THE PROPOSED CLASS SATISFIES RULE 23 ........................................................16

A.  The Class Satisfies the Requirements of Rule 23(a) .........................................................16

    1.  The Class Satisfies Numerosity ........................................................................17

    2.  There Are Common Questions of Law or Fact to the Class ...............................17

    3.  Plaintiffs' Claims Are Typical of Those of the Class ........................................18

    4.  Plaintiffs Will Adequately Protect the Interests of the Class .............................18

B.  The Requirements of Rule 23(b)(3) Are Satisfied ...........................................................19

    1.  Common Questions of Law and Fact Predominate ...........................................19

    2.  A Class Action Is Superior to Other Methods of Adjudication ...........................20

C.  Lead Counsel Is Adequate Class Counsel ......................................................................21

IV. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS ........................................22

CONCLUSION……………………………………………………………………………..25

i

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................ 21

*Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Ca. July 19, 2024) ...................................................... 10

*Boger v. Citrix Sys., Inc.*,
2023 WL 1415625 (D. Md. Jan. 31, 2023) .......................................................... 16

*Celeste v. Intrusion, Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ................................................... 15

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................................................... 12

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ............................................................................... 5

*D&M Farms v. Birdsong Corp.*,
2021 WL 1256905 (E.D. Va. Apr. 5, 2021) .......................................................... 7

*Funkhouser v. City of Portsmouth*,
2014 WL 12597159 (E.D. Va. Oct. 16, 2014) ..................................................... 17

*In re 3D Sys Sec. Litig.*,
2023 WL 4621716 (E.D.N.Y. July 19, 2023) ...................................................... 23

*In re BearingPoint, Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) .......................................................................... 19

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) .......................................................... 8, 10, 11

*In re Jeld-Wen Holding, Inc. Sec. Litig.*,
2021 WL 1186326 (E.D. Va. Mar. 29, 2021) ................................................. 17, 18

*In re Livent Corp. Sec. Litig.*, Case No. 190501229,
Notice (Pa. Com. Pl.) ........................................................................................... 14

*In re Microstrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001)……………………………………………..9

*In re Mills Corp. Sec. Litig.*,
257 F.R.D. 101 (E.D. Va. 2009) ................................................................. 17

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ................................................................. 10

*In re Neustar Inc. Sec. Litig.*,
2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ..................................... 7, 20

*In re NII Holdings, Inc. Sec. Litig.*,
311 F.R.D. 401 (E.D. Va. 2015) ................................................................. 18

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ............................................................... 7

*In re QuantumScape Sec. Litig.*,
2024 WL 3491039 (N.D. Ca. July 18, 2024) ........................................ 23

*In re Scor Holding (Switz.) AG Litig.*,
537 F. Supp. 2d 556 (S.D.N.Y. 2008) ..................................................... 21

*In re Tenaris S.A. Sec. Litig.*,
2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ........................................ 15

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ............................................................... 20

*Lomascolo v. Parsons Brinckerhoff, Inc*,
2009 WL 3094955 (E.D. Va. June 23, 2009) ......................................... 5

*Malespin v. Longeveron Inc.*,
2023 WL 11820921 & n.3 (S.D. Fla. Oct. 16, 2023) .......................... 15

*Morris v. Wachovia Sec., Inc.*,
223 F.R.D. 284 (E.D. Va. 2004) ................................................................. 17

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) ........................................................................ 8

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
2017 WL 2734714 (D.N.J. June 26, 2017) ............................................ 15

*Phillips v. Triad Guaranty Inc.*,
2016 WL 1175152 (M.D.N.C. Mar. 23, 2016) ................................. 8, 23

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns*,
2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ................................... 14, 23

*Plymouth Cnty. Ret. Sys. & Okla. Police Pension & Ret. Sys. v. Evolent Health*,
  No. 1:19-cv-01031-MSN-WEF, 2022 WL 14313488 (E.D. Va. Aug. 2, 2022) ...................... 9

*Robinson v. Carolina First Bank NA*,
  2019 WL 719031 (D.S.C. Feb. 14, 2019) .................................................................... 5

*Seaman v. Duke Univ.*,
  2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) ........................................................ 15

*Sims v. BB&T Corp.*,
  2019 WL 1995314 (M.D.N.C. May 6, 2019) ............................................................ 5

*Sinnathurai v. Novavax, Inc.*,
  No. 8:21-CV-02910, 2024 WL 2875414 (D. Md. May 13, 2024)............................. 9

*Solomon v. Am. Web Loan, Inc*,
  2020 WL 3490606 (E.D. Va. June 26, 2020) ........................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).......................................................................................... 19, 21

*United States v. Manning Coal Corp.*,
  977 F.2d 117 (4th Cir. 1992) ................................................................................. 5

*Voulgaris v. Array Biopharma Inc.*,
  2021 WL 6331178 (D. Colo. Dec. 3, 2021) ), *aff'd,*
  60 F.4th 1259 (10th Cir. 2023).............................................................................. 15

**NO TABLE OF AUTHORITIES ENTRIES FOUND.NO TABLE OF AUTHORITIES ENTRIES FOUND.**

Lead Plaintiff James Shunk ("Lead Plaintiff") and additional named plaintiff Justin Gruetzmacher, on behalf of themselves and the proposed Class (collectively "Plaintiffs"), respectfully submit this memorandum in support of their unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation; (ii) approval of the form, content and manner of providing notice to the Class; (iii) appointing Strategic Claims Services, Inc. ("SCS" or the "Claims Administrator") as the claims administrator to administer the notice and claims process; (iv) appointing Bernstein Liebhard LLP to continue as class counsel, and The Kaplan Law Firm to continue as Local Counsel, in connection with the Settlement; and (v) a date for the Settlement Hearing at which the Court will consider final approval of the Settlement, entry of the proposed Judgment, and Lead Counsel's application for an award of attorneys' fees and expenses. Defendants do not oppose the relief requested by this motion and stipulate to entry of the proposed order which is annexed to the Hasson Decl. as Exhibit A-1.[1]

## PRELIMINARY STATEMENT

Lead Plaintiff and Lead Counsel respectfully submit that the Settlement here is an excellent result for the Settlement Class[2] and should be preliminarily approved by the Court. The Settlement provides $6,625,000 in cash to the Settlement Class to resolve all claims alleged against Defendants in this Action. This amount represents approximately 15% of maximum Class-wide damages ($44.4 million) as estimated by Lead Plaintiff's expert, which is an excellent outcome for

---

[1] Defendants are IronNet, Inc. ("IronNet" or the "Company"), Keith B. Alexander, James C. Gerber, and William E. Welch (collectively, the "Individual Defendants" and with IronNet, "Defendants"). Any undefined terms have the definitions set forth in the September 23, 2024 Stipulation of Settlement (the "Stipulation"), annexed to the supporting Declaration of Laurence J. Hasson ("Hasson Decl.") as Exhibit A.

[2] The Settlement Class is also referred to here as the "Class".

a securities class action, and particularly so at this stage of the case.  Indeed, the Settlement is over three times larger than the median 4.2% recovery for similarly-situated 2023 securities class actions that settled after a ruling on a motion to dismiss but before the filing of class certification. *See* Hasson Decl. Ex. B at 15 (2023 Cornerstone Report). Moreover, Lead Plaintiff and Lead Counsel further believe this Settlement is an excellent result considering the additional challenges presented by IronNet's bankruptcy, and the fact that this case involves forward-looking projections where actual knowledge is required to prove fraud.

Significantly, this Settlement is also the result of arm's-length negotiations by experienced counsel after an extensive mediation process that continued for months. The Settlement has all the indicia of a fair, reasonable, and adequate settlement pursuant to Rule 23(e).

Plaintiffs seek preliminary approval of the Settlement so that notice may be provided to the Settlement Class and that a Settlement Hearing can be scheduled by the Court. Entry of the proposed Preliminary Approval Order will begin the process of considering final approval of the Settlement by authorizing notice of the Settlement to members of the Class. A final Settlement Hearing will then be conducted after the Class has been given an opportunity to object or seek exclusion so that the Court can make a final determination as to whether to approve the Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 15, 2022, the Court appointed James Shunk as Lead Plaintiff in this Action. ECF No. 43.

Before filing the August 29, 2022 amended complaint (the "Complaint") in this Action, Lead Plaintiff, through Lead Counsel conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action.  Lead Plaintiff, through Lead Counsel, reviewed and analyzed: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information,

including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (iii) research reports issued by financial analysts concerning the Company; and (iv) other publicly available information and data concerning the Company.  Lead Plaintiff, through Lead Counsel, also interviewed former IronNet employees; consulted with experts concerning damages; submitted Freedom of Information Act (FOIA) requests to the Department of Defense and the Securities and Exchange Commission; and researched the applicable law governing the claims and potential defenses.

On August 29, 2022, Plaintiff filed the Complaint, alleging Section 10(b) and Section 20(a) claims against all Defendants and a Section 20A claim against Defendant Alexander. ECF No. 46. On October 26, 2022, Defendants moved to dismiss the Complaint. ECF Nos. 47, 48. On November 30, 2022, Plaintiffs opposed, and Defendants replied. ECF Nos. 51, 52.

On August 9, 2023, the Court denied Defendants' motion to dismiss. ECF No. 53.

On October 3, 2023, Plaintiffs served Interrogatories and Requests for Production on Defendants.

Also on October 3, 2023, Defendants informed Lead Counsel that Arnold & Porter Kaye Scholer LLP would be substituting in for Cooley LLP as counsel for Defendants.

On October 12, 2023, Plaintiffs served Initial Disclosures on Defendants.

On October 12, 2023, IronNet's Bankruptcy counsel, Young, Conaway, Stargatt & Taylor LLP filed for IronNet's Chapter 11 bankruptcy. *See In Re: IronNet Inc.*, 1:23-BK-11710 (D. Del.).

On October 24, 2023, IronNet filed a Suggestion of Bankruptcy in this Action that noted the Action had been stayed against IronNet upon the October 12, 2023 Chapter 11 filing (Dkt. Nos. 63-66, 68 (Hasson Decl. Exs. C-1 to C-5). ECF No. 65.

Thereafter, Lead Counsel retained experienced bankruptcy counsel, Lowenstein Sandler LLP, to assist Lead Counsel in protecting Plaintiffs and the Settlement Class by ensuring that Plaintiffs' already sustained claims against IronNet would not be released through the bankruptcy.

On December 22, 2023, Lead Counsel had Proofs of Claim forms filed for Plaintiffs and the Settlement Class.

Throughout early January 2024, Lead Counsel and Lowenstein Sandler had ongoing negotiations with IronNet's Bankruptcy Counsel concerning the language in IronNet's plan of reorganization (the "Plan") to ensure that it adequately protected Plaintiffs and the Settlement Class.

On January 18, 2024, the Delaware Bankruptcy Court confirmed IronNet's Plan, which expressly stated that Plaintiffs' claims in this Action were not released. *Id*. at Dkt. No. 330, page 48. (Hasson Decl. Ex. D). On February 21, 2024, the Plan became effective. *See* Bankruptcy Case Docket (Dkt. Nos. 330, 363) (Hasson Decl. Exs. D and E).

Settlement discussions between the Parties also began in early 2024. On March 12, 2024, the Parties participated in an all-day mediation with Jed Melnick of JAMS. In advance of the session, the Parties provided mediation statements to the mediator. The full-day mediation session ended without a settlement, but the Parties continued to negotiate and presented supplemental mediation statements to the mediator on March 22, 2024. In the months that followed, the Parties continued to work with the mediator to see if a settlement could be achieved.

On April 18, 2024, Defendants filed a Status Update in this Action notifying the Court that the Parties were engaged in settlement discussions. ECF No. 67.

On June 4, 2024, the Parties reached an agreement in principle to settle the Action and continued thereafter to negotiate the terms of settlement.

On July 3, 2024, the Parties agreed on a term sheet setting forth principal terms of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action and related claims, in return for a cash payment by, or on behalf of, Defendants of $6,625,000 (the "Settlement Amount"), for the benefit of the Class.

On September 23, 2024, the Parties signed the Stipulation.

**ARGUMENT**

## I.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

Courts in the Fourth Circuit have long recognized a strong public policy and presumption favoring settlements. *See, e.g., Lomascolo v. Parsons Brinckerhoff, Inc*, 2009 WL 3094955, at *10 (E.D. Va. June 23, 2009) ("[t]here is an overriding public interest in favor of settlement, particularly in class action suits") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *Robinson v. Carolina First Bank NA*, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("[t]here is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation"). Indeed, "[i]t has long been clear that the law favors settlement" and "[t]his is particularly true in class actions." *Sims v. BB&T Corp*., 2019 WL 1995314, at *3 (M.D.N.C. May 6, 2019) (quoting *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992).

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, resolution of a federal class action via settlement occurs in two stages.  First, district courts perform a preliminary review to determine whether a settlement class should be certified, and if notice of the proposed settlement should be sent to the settlement class. *See* Fed. R. Civ. P. 23(e)(1). Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing, at which all interested parties are afforded an opportunity to be heard on the proposed settlement. *See*

Fed. R. Civ. P. 23(e)(2). A court should grant preliminary approval upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2) and certify the proposed class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B).  Here, as discussed below, it is clear that the Court will "likely be able" to finally approve the settlement under Rule 23(e)(2).

The crux of a court's review of a motion for preliminary approval of a class action settlement is whether notice should be provided given the likelihood that the court will be able to finally approve the settlement and certify a settlement class. Specifically, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3] Courts may also consider the Fourth Circuit's long-standing approval factors "because our factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors, the outcome[s] [are] the same under both our factors and the Rule's

---

[3] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement in connection with a proposed settlement. Here, in addition to the Stipulation, on September 23, 2024, the Parties entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Defendants have the discretion to terminate the Settlement if requests for exclusion from the Class exceed a certain agreed-upon threshold. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. As is standard in securities settlements, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. Other than agreements between IronNet and its insurers in connection with the payment of the Settlement Amount, the Stipulation and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

factors." *D&M Farms v. Birdsong Corp.*, 2021 WL 1256905, at \*3 (E.D. Va. Apr. 5, 2021).

As detailed *infra*, the proposed Settlement here readily satisfies Fed. R. Civ. P. 23(e)(1)(B) such that the Class should receive notice of the Settlement. Additionally, the proposed notice program meets the requirements of Rule 23(c)(2)(B), the PSLRA, and due process.

## II.   NOTICE IS WARRANTED AS THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE PURSUANT TO RULE 23(e)(2)

### A.   Lead Plaintiff and Lead Counsel Adequately Represented the Class

In determining whether to approve a class action settlement, the Court should first consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This requirement is "met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are 'qualified, experienced and generally able to conduct the litigation.'" *Solomon v. Am. Web Loan, Inc*, 2020 WL 3490606, at \*2 (E.D. Va. June 26, 2020) (quoting *In re Neustar Inc. Sec. Litig.*, 2015 WL 5674798, at \*4 (E.D. Va. Sept. 23, 2015)).

Here, there is no antagonism or conflict between Lead Plaintiff and the Class. Lead Plaintiff, like the other Class Members, purchased IronNet securities during the Class Period and was injured by the same alleged misstatements. Lead Plaintiff suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and his interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member").

Lead Plaintiff and Lead Counsel have more than adequately represented the Class, *inter alia*, by diligently prosecuting the Action since its inception, defeating Defendants' motion to dismiss, protecting the Class's claims from IronNet's bankruptcy, and achieving an excellent

Settlement after an extensive mediation process.  Lead Plaintiff oversaw the litigation and communicated regularly with Lead Counsel to discuss case developments, including settlement. Lead Plaintiff also retained Lead Counsel, who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* Hasson Decl. Ex. F (Bernstein Liebhard firm resume).

B.  **The Settlement Is the Result of Arm's-Length Negotiations**

When assessing a settlement, a court must consider whether the "the proposal was negotiated at arms-length." Fed. R. Civ. P. 23(e)(2)(B).

Here, the Settlement was reached after extensive arm's-length negotiations between experienced and well-informed counsel with the assistance of Jed Melnick of JAMS, a well-respected and experienced mediator, which militates further in favor of approving the Settlement. *See* https://www.jamsadr.com/melnick/; *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 841 (E.D. Va. 2016) ("experience[d]" mediator supported that settlement was "fair and reasonable"); *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (neutral mediator supports settlement approval).

Additionally, Courts give considerable weight to the opinion of experienced and informed counsel. Indeed, "concerns of collusion" are minimized where counsel for both sides are "nationally recognized members of the securities litigation bar." *Phillips v. Triad Guaranty Inc.*, 2016 WL 1175152, at *3 (M.D.N.C. Mar. 23, 2016). Here, Lead Counsel is highly experienced and well-respected in the field of securities class action litigation and has an extensive track record with numerous large cash recoveries on behalf of classes they have represented.  *See* Hasson Decl. Ex. F. In addition, Arnold & Porter Kaye Scholer is a formidable and well-respected defense firm that fought hard for Defendants.

Accordingly, the fact that the Settlement was negotiated at arm's-length weighs in favor of approval.

## C. The Relief Provided by the Settlement Is More Than Adequate

### 1. The Settlement Provides An Excellent Recovery for the Class

The $6.625 million cash Settlement is an excellent recovery for the Class. The Settlement represents approximately 15% of maximum Class-wide damages as estimated by Lead Plaintiff's expert. On a percentage of recovery basis, the Settlement is *over three times* larger than the median 4.2% recovery for similarly-situated 2023 securities class actions settling after a ruling on a motion to dismiss, but before the filing of class certification.  *See* Hasson Decl. Ex. B at 15 (2023 Cornerstone Report).  The Settlement is also well above the recoveries in many other court-approved securities class action settlements in the Fourth Circuit.  *See*, *e.g., Sinnathurai v. Novavax, Inc.*, No. 8:21-CV-02910, 2024 WL 2875414, at *1 (D. Md. May 13, 2024) (approving recovery of 5.12% of estimated maximum damages); *see also Novavax* final judgment (Dkt. No. 151) dated May 24, 2024 approving same (Hasson Decl. Ex. G); *Orman v. America Online, Inc.*, Civ. A. No. 1:97–CV-00264 (E.D. Va. Dec. 14, 1998) (Dkt. No. 246) (approving settlement amounting to approximately 5% of the maximum recovery) (cited in *In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 n.22 (E.D. Va. 2001)); *Plymouth Cnty. Ret. Sys. & Okla. Police Pension & Ret. Sys. v. Evolent Health*, 1:19-cv-01031-MSN-WEF, 2022 WL 14313488, at *1 (E.D. Va. Aug. 2, 2022) (approving settlement amount representing 12% of maximum recoverable damages); *see also Plymouth Cnty. Ret. Sys. & Okla. Police Pension & Ret. Sys. v. Evolent Health*, No. 1:19-cv-01031-MSN-WEF (E.D. Va. Nov. 18, 2022) (Dkt. No. 256) (Hasson Decl. Ex. H) (final judgment approving same).

## 2.   Plaintiffs Would Face Significant Costs, Risks, And Delays If They Continued To Prosecute This Case

This case, which survived a motion to dismiss, was far from over, and if it did not settle now would have continued to pose many risks and would have continued to incur substantial costs that could have jeopardized the Class's ability to recover anything in this Action.

First, IronNet is a company emerging from bankruptcy. Courts have recognized that bankrupt corporate defendants pose numerous risks to a recovery and complicate discovery. *See*, *e.g.*, *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *5 (C.D. Ca. July 19, 2024) ("the court observes that HyreCar filed for bankruptcy…which 'added another layer of complexity, created substantial obstacles for discovery, and posed significant difficulties for recovery"). In light of the risks posed by IronNet's bankruptcy, the Settlement here is a great result.

Second, the Settlement is adequate because complex securities fraud class actions such as this one present myriad risks that a plaintiff must overcome to ultimately secure a recovery and this case was far from over. *See, e.g., In re Genworth*, 210 F. Supp. 3d at 844 ("securities fraud cases require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish'") (quoting *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009)). While Plaintiffs remain confident in their ability to ultimately prove the alleged claims, further litigation, including trial, is always a risky and costly proposition. It also takes significant time.

Third, because the case involves forecasts and projections, many of the alleged misstatements will come under the PSLRA's safe harbor provision for forward looking projections and, thus, Plaintiffs will have to prove actual knowledge here. As this Court noted in its decision denying, in part, Defendants' motion to dismiss, "[t]he gravamen of [the] Complaint is that Defendants **knew, but concealed**, that the FY22 revenue and ARR forecasts they provided…had

'no realistic chance of closing FY 22". ECF No. 53 at 12 (emphasis added).[4] Although Plaintiffs are confident in this case, proving – not merely pleading – actual knowledge in securities fraud cases is always a challenging and difficult task. *See*, *e.g.*, *In re Genworth*, 210 F. Supp. 3d at 841-42 ("plaintiffs would need to prove that these statements were made with scienter, and were not simple good faith mistakes or the result of negligence…. The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this [] settlement").

Fourth, Plaintiffs would be required to prove all elements of his claims, while Defendants need only succeed on one defense to potentially defeat the entire Action. At summary judgment or at trial, Defendants likely would have argued that documentary evidence and testimony showed that their statements about IronNet's contracts and financial projections were not false or misleading when made because they were forecasts and statements of opinion based on reasonable calculations and assumptions made by the Company's financial personnel. Even though Plaintiffs believe they have strong counterarguments, it is uncertain that Plaintiffs could convince the Court or a jury, particularly considering the complexity of the underlying calculations. *See In re Genworth*, 210 F. Supp. 3d at 841-42 ("plaintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony").

Fifth, in continued litigation, costly expert discovery would have been protracted and it is likely that Defendants would have sought summary judgment and exclusion of vital expert testimony. There was no guarantee that the Class would prevail against Defendants' challenges

---

[4] *See also id*. at 17 ("***At this early stage of the proceedings***, and even with the heightened standards of Rule 9(b) and the PSLRA in mind, the Court finds that Defendants' December 15, 2021 press release sufficiently establishes an inference of actual knowledge on their part"); *id*. at 20 ("[t]he Court thus finds Defendants' statements regarding projected gross margins to be actionable ***at this dispositional stage***").

and, even if it did, how the Court's rulings would affect damages or how the case would be presented to the jury. And a trial of Plaintiffs' claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. Thus, courts have recognized that settlement of securities fraud cases are often reasonable because of the risks associated with proving the elements of the claims. *See*, *e.g.*, *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*10 (S.D.N.Y. Oct. 16, 2019) ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain").

Finally, one of the defendants here, Keith Alexander, is a retired four-star general. Plaintiffs are aware that Mr. Alexander could potentially make a sympathetic defendant before a Virginia jury and that this could be another risk in proving Plaintiffs' case.

The foregoing costs, risks, and the protracted process for any trial and appeals, militate further in favor of approving the Settlement.

### 3.    The Proposed Process for Distributing Relief to the Class is Effective

The method for processing Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. The Claims Administrator selected by Lead Counsel (subject to Court approval), SCS, is an experienced claims administrator that will process claims under the guidance of Lead Counsel.  *See* Hasson Decl. Ex. I (SCS Biography).

The Claims Administrator proposes a well-established protocol for the processing of claims in a securities class action. The Claims Administrator will send to Class Members (i) the Postcard Notice directing Class Members to the settlement website containing the Notice and Claim Form, or (ii) when possible an email containing the Postcard Notice, on or before fifteen (15) business days after the date of entry of the Preliminary Approval Order. Potential class members will then

submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Court-approved Plan of Allocation. *See* Hasson Exhibit A (Stipulation) ¶¶24-27; *id.* Exhibit A-1 ¶67. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination.

After the Settlement reaches its Effective Date (*see* Stipulation ¶41) and the passing of all applicable deadlines, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after a reasonable period of time from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after redistribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to the Consumer Federation of America, or such other non-sectarian, not-for-profit organization serving the public interest approved by the Court. *See* Stipulation ¶28.[5]

---

[5] Consumer Federation of America ("CFA") is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education before the judiciary, Congress, the White House, federal and state regulatory agencies, and state legislatures. The CFA is a "leader in the advocacy community on a number of critical

### 4.   The Anticipated Attorney's Fees and Expenses Are Reasonable

As set forth in the Notice, Lead Counsel intend to request attorneys' fees of no more than

33% of the $6.625 million recovery, or approximately $2.2 million, and litigation expenses of no

more than $500,000, which may include an application for reimbursement by the Lead Plaintiff

pursuant to the PSLRA. Lead Counsel's requested fees in this case are well within the range of

reasonableness and in line with awards in other securities settlements approved in this District and

Circuit. *See e.g., Plymouth Cnty. Ret. Sys. v. GTT Commc'ns*, 2021 WL 1659848, at *5-6 (E.D.

Va. Apr. 23, 2021) ("one-third of the [s]ettlement [f]und in fees" in $25 million securities class

action settlement is "fair and reasonable and consistent with awards in similar cases in this District,

the Fourth Circuit and nationwide"); *In re Star Scientific, Inc. Sec. Litig.*, Case No. 3:13-cv-00183-

JAG-DJN, slip op. at 1 (E.D. Va. June 26, 2015) (awarding $1.966 million fee, which was one-

third of $5.89 million settlement) (Dkt. No. 143) (Hasson Decl. Ex. N); *In re Constellation Energy

Grp., Inc. Sec. Litig.*, No. 1:08-cv-02854-CCB, slip op. at 2 (D. Md. Nov. 4, 2013) (awarding one-

third of $4 million recovery) (Dkt. No. 114) (Hasson Decl. Ex. O); *Hardwick v. Rent-A-Center,

Inc.*, No. 3:06-cv-00901, slip op. at 11 ¶ 17 (S.D.W. Va. Feb. 3, 2009) (Hasson Decl. Ex. P)

(awarding fees of one-third of $3.5 million settlement); *Klugmann v. Am. Capital Ltd.*, 8:09-CV-

00005-PJM, slip op. at 9 ¶ 16 (D. Md. June 12, 2012) (Dkt. No. 87) (Hasson Decl. Ex. Q) (one-

third awarded on $18 million settlement); *Plymouth County*, No. 1:19-cv-01031-MSN-WEF, slip

op. at 2 ¶ 4, 4(a) (E.D. Va. Nov. 18, 2022), Dkt. No. 257 (Hasson Decl. Ex. R) (approving 33% of

---

investor protection issues, … particularly those that affect retail investors and retirement savers."
*See* Hasson Decl. Ex. J at 6 (CFA-Annual-Report-2023-Final.pdf (consumerfed.org). The CFA
has been approved as a cy pres beneficiary in several securities cases, including *In re Livent Corp.
Sec. Litig.*, Case No. 190501229, Notice at 30 (Pa. Com. Pl.) (Hasson Decl. Ex. K), *In re Broadcom
Corp. Sec. Litig.*, No. 01-CV-00275-MLR, slip op. at 2 (C.D. Cal. Aug. 1, 2012) (Dkt. No. 760)
(Hasson Decl. Ex. L), and *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 12-cv-04677-YGR (N.D.
Cal.) (*see* Notice mentioning CFA at 9) (Hasson Decl. Ex. M).

fees on $23.5 million settlement); *Seaman v. Duke Univ.*, 2019 WL 4674758, at *3 (M.D.N.C. Sept. 25, 2019) (awarding one-third fee in a $54.5 million recovery, noting that awards of one-third are "common" in the Fourth Circuit).[6]

The expenses ($500,000) in this case were all necessary. First, the notice program here will be expensive (SCS estimates it at approximately $325,000) because IronNet had a very low number of institutional investors. This means that a particularly large number of individual notices will have to be sent out to potential Class Members. To account for this, Lead Counsel opted to utilize the Postcard Notice here – to keep the costs to the Class down as much as possible. Second, IronNet's trading volume during the Class Period was very high. Third, Lead Counsel had to hire bankruptcy counsel to protect Class Members' rights when IronNet went bankrupt. Bankruptcy counsel billed at an hourly rate for their work.

The basis of Lead Counsel's fee and expense request will be detailed in the motion for final approval of fees and expenses, but the expenses were all necessary to achieve this excellent Settlement.

### D. **Class Members Are Treated Equitably Relative to One Another**

The Plan of Allocation, drafted with the assistance of Plaintiffs' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible

---

[6] Courts in other Circuits have also routinely approved attorney fees of 33% in similarly-sized settlements. *See, e.g., In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *10, 12 (E.D.N.Y. Apr. 22, 2024) (approving one-third of $9.5 million settlement); *Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *5 (D. Colo. Dec. 3, 2021) (awarding one-third of $8.5 million settlement), *aff'd*, 60 F.4th 1259 (10th Cir. 2023); *In re Sundial Growers Inc. Sec. Litig.*, No. 1:19-cv-08913-ALC, slip op. at 2 (S.D.N.Y. Oct. 6, 2022) (awarding 33% of $7 million settlement) (Hasson Decl. Ex. S); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, at *11-12 (D.N.J. June 26, 2017) (awarding one-third fee of $4.5 million settlement); *Celeste v. Intrusion, Inc.*, 2022 WL 17736350, at *1, 11 (E.D. Tex. Dec. 16, 2022) (awarding one-third of $3.25 million settlement); *Malespin v. Longeveron Inc.*, 2023 WL 11820921, at *6 & n.3 (S.D. Fla. Oct. 16, 2023) (awarding one-third of approximately $1.4 million settlement).

claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D). Each Authorized Claimant, including the Plaintiffs, will receive a distribution pursuant to the Plan of Allocation, and the Plaintiffs will be subject to the same formula for distribution of the Settlement as other Class Members on the same *pro rata* basis. Courts have repeatedly approved similar plans. *See*, *e.g.*, *Boger v. Citrix Sys., Inc.*, 2023 WL 1415625, at *9 (D. Md. Jan. 31, 2023) ("[t]he relief provided under the Settlement Agreement is also adequate, because the Class members will be treated equitably relative to each other").

## III.   THE PROPOSED CLASS SATISFIES RULE 23

Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs also request certification of the Class for Settlement purposes, which has been stipulated to by the Parties, consisting of all persons or entities who purchased or otherwise acquired publicly traded IronNet securities from September 14, 2021 through December 15, 2021, inclusive, except those excluded from the Class. *See* Stipulation ¶1(h).  At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the Class at final approval. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). As demonstrated below, the Class readily satisfies all the applicable requirements of Rules 23(a) and 23(b)(3), and Lead Counsel satisfies Rule 23(g).[7]

### A.   The Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

---

[7] Excluded from the Class are Defendants, (ii) the officers and directors of IronNet during the Class Period, (iii) the immediate family members, legal representatives, heirs, successors, and assigns of all excluded individuals, and (iv) any affiliates or other entities in which Defendants have or had a controlling interest during the Class Period. Stipulation ¶1(f).  Also excluded from the Class are any Persons who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.       The Class Satisfies Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). The "numerosity requirement is seldom disputed in securities fraud cases." *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104 (E.D. Va. 2009). Here, numerosity is readily established. IronNet was a publicly owned corporation that had millions of shares of securities outstanding and was listed on the New York Stock Exchange (NYSE) throughout the Class Period. IronNet securities were actively traded with Class members purchasing thousands of IronNet securities on the NYSE throughout the Class Period. Accordingly, the Class is sufficiently numerous as there are likely at least hundreds of Class members.

### 2.       There Are Common Questions of Law or Fact to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality only "requires that there be at least one question of law or fact common to the members of the class." *Funkhouser v. City of Portsmouth*, 2014 WL 12597159, at *3 (E.D. Va. Oct. 16, 2014) (quoting *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 292 (E.D. Va. 2004). The common questions of fact and law here include whether: (1) Defendants violated the federal securities laws; (2) Defendants misrepresented or omitted material facts; (3) Defendants acted with scienter; (4) the Individual Defendants controlled IronNet and its alleged violations of the federal securities laws; (5) Defendants' alleged misrepresentations and omissions caused Class Members to suffer a compensable loss; (6) Settlement Class Members have sustained damages,

and the proper measure of damages; and (7) Defendant Alexander violated 20(A) when he sold IronNet stock.

These are the exact types of issues that regularly satisfy the commonality requirement in federal securities cases. *See, e.g., In re Jeld-Wen Holding, Inc. Sec. Litig.*, 2021 WL 1186326, at *3-4 (E.D. Va. Mar. 29, 2021); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 406 (E.D. Va. 2015).

### 3.      Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality element is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *NII Holdings*, 311 F.R.D. at 406. In other words, so long as Plaintiffs seek "to recover damages for losses caused by the same allegedly materially false and misleading statements and omissions," the typicality requirement is met. *Id*. at 407. Here, Plaintiffs' claims are typical of the Class's claims because they all allege that they purchased IronNet securities at artificially inflated prices due to Defendants' alleged material misstatements and omissions, and their claims are subject to the same proof. Further, Plaintiffs are not subject to any unique defenses that would make them atypical. Thus, typicality is satisfied.

### 4.      Plaintiffs Will Adequately Protect the Interests of the Class

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties [] fairly and adequately protect the interests of the class." *See Jeld-Wen*, 2021 WL 1186326, at *4 (adequacy established where plaintiffs "vigorously and competently represented the interests of the proposed class members throughout this litigation").  Here, Plaintiffs assert the same claims and request the same relief as the proposed Class. Plaintiffs and all Class members have suffered losses from purchasing

IronNet securities at artificially inflated prices. The Complaint alleges all Class members have been injured by the same misrepresentations and omissions. There is, therefore, no conflict between Plaintiffs and the absent members of the Class.

Finally, Plaintiffs engaged qualified, experienced and capable attorneys to litigate this case. Lead Counsel are highly experienced in complex class action litigation, especially securities fraud actions, and have prosecuted this action vigorously. *See* Hasson Decl. Ex. F. Lead Counsel's vigorous pursuit of the Class's interests has been evidenced in the proceedings in this Court and before the Bankruptcy Court to protect the Class's claims.

### B.   **The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Class satisfies these requirements.

### 1.      **Common Questions of Law and Fact Predominate**

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members." As the above analysis demonstrates, there are numerous common questions of law and fact, including whether Defendants' statements were false or misleading, whether Defendants acted with scienter, and whether, and to what extent, Class Members suffered damages caused by the revelation of Defendants' alleged fraud.

Further, "class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws." *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 545 (E.D. Va. 2006); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("[t]his Court has long recognized that meritorious private actions to enforce federal

antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission"). The geographically dispersed nature of the Class, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation, strongly support a finding of superiority here. The Class thus satisfies all the requirements of Rules 23(a) and 23(b).

### 2.        A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). *See Neustar*, 2015 WL 5674798, at *9 (finding superiority factor met and noting that "a class action presents plaintiffs the greatest leverage for settlement when compared to individual litigation in courts that may render inconsistent rulings"). In general, "[s]ecurities suits easily satisfy…Rule 23(b)(3) because the alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015).

Each factor weighs in favor of the superiority of a class action. The members of the proposed Class have little incentive to pursue individual actions. The costs and expenses of such actions, when weighed against the individual recoveries obtainable, would be prohibitive. Compl. ¶ 180. Plaintiffs are unaware of any individual direct shareholder actions brought by a Class member against Defendants alleging the claims at issue here. The desirability of concentrating the

litigation of these claims in this forum is clear. This class action is not only an essential mechanism for investors to redress the injuries they suffered because of Defendants' alleged misconduct, but it also will help achieve the statutory objective of a fair and reliable securities market. *See Tellabs*, 551 U.S. 308, 321 n.4 ("private securities litigation is an indispensable tool with which…investors can recover their losses—a matter crucial to the integrity of domestic capital markets"). Moreover, there are thousands of Class members (Compl. ¶ 176) and "[l]itigating each case separately would be wasteful." *In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008). It would also "risk disparate results among those seeking redress." *Id*. Finally, since this is a request for class certification only for purposes of settlement, the "[C]ourt need not inquire as to whether the case, if tried, would present management problems." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citing Fed. R. Civ. P. 23(b)(3)(D)). A Class-wide resolution is superior to individual actions.

### C. **Lead Counsel Is Adequate Class Counsel**

Fed. R. Civ. P. 23(c)(1)(B) states that any class certification order must appoint class counsel in accordance with Fed. R. Civ. P. 23(g). Bernstein Liebhard LLP previously satisfied Rule 23(g) through its motion to be appointed Lead Counsel for the Class under the PSLRA by detailing its experience litigating securities class actions. *See* ECF Nos. 27 at 7, 27-5. *See also* updated Bernstein Liebhard biography at Hasson Decl. Ex. F. The Court granted the motion. *See* ECF No. 41; *see also* Rule 23(g)(1) 2003 Advisory Notes (clarifying that the mandatory elements of Rule 23(g) do not apply to PSLRA cases because that "statute provides otherwise" by requiring prior Court approval of the lead counsel to represent the class). Additionally, Bernstein Liebhard's work litigating this case and negotiating this excellent Settlement demonstrates that it has, and will continue to, "fairly and adequately represent the interests of the class." Rule 23(g)(4). Accordingly,

Lead Counsel Bernstein Liebhard is adequate to continue to serve as Class Counsel for a Settlement Class certified under Rule 23(b)(3).

## IV.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

Rule 23(c)(2)(B) requires notice of the pendency of a class action to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Lead Counsel respectfully submits that the Postcard Notice, Notice, and Summary Notice, as well as the Claim Form (Exhibits 1-4 to the Preliminary Approval Order filed herewith as Exhibit A to the Stipulation), are the best notice that is practicable here and should be issued to the Class. The proposed forms of notice collectively describe the terms of the Settlement; the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and litigation expenses that may be sought; the procedure for requesting exclusion from the Class, objecting and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable even if Plaintiffs prevailed on each claim; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis), as well as a possible request for a reimbursement award to the Lead Plaintiff; (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Pursuant to the Stipulation, the Claims Administrator[8] will issue notice by sending to Class Members, including by information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases, (i) the Postcard Notice directing Class Members to the settlement website containing the Notice and Claim Form; or (ii) an email, when possible, containing the Postcard Notice.  The Claims Administrator will also publish the Summary Notice in *The Wall Street Journal* and disseminate the Summary Notice on the Internet using PR Newswire. The Notice and Claim Form will also be posted on both the Settlement website and Lead Counsel's website. This notice process is well-accepted and satisfies the requirements of Rule 23, the PSLRA, and due process. *See Chupa v. Armstrong Flooring, Inc.*, No. 2:19-cv-09840-CAS-MRWx, slip op. at 5 ¶ 8 (C.D. Cal. Feb. 22, 2021) (Dkt. No. 99) at 15 (preliminary approval order approving notice program including mailing or emailing Postcard Notice) (Hasson Decl. Ex. T); *In re 3D Sys Sec. Litig.*, 2023 WL 4621716, at *14 (E.D.N.Y. July 19, 2023) (granting preliminary approval of notice program consisting of emailing a copy of a summary notice and links to the location of the long-form notice and claim form, or if no email address can be obtained, mailing a postcard notice); *In re QuantumScape Sec. Litig.*, 2024 WL 3491039, at *3 (N.D. Ca. July 18, 2024) (granting preliminary approval of notice program including postcard notice); *Phillips*, 2016 WL 1175152, at *1, *5 (M.D.N.C. 2015) (publication of summary notice in Investor's Business Daily and via PR Newswire, establishment of website, and mailing notice to thousands of potential class members constituted sufficient notice); *GTT Commc'ns*, 2021 WL 1659848, at *3 (approving similar notice program in securities class action).

---

[8] Lead Plaintiff also requests that the Court appoint SCS as the Claims Administrator to provide all notices approved by the Court to the Class Members, to process Claims Forms, and to administer the Settlement. *See* SCS Biography, Hasson Decl. Ex. I.

Finally, in connection with preliminary approval of the Settlement, the Court must set a Settlement Hearing date, dates for mailing or emailing the Postcard Notice, publication of the Summary Notice, and deadlines for requesting exclusion from the Class, objecting, filing motions in support of final approval and attorneys' fees and expenses, and submission of Claim Forms. Plaintiffs propose the following schedule that is keyed to the final approval hearing. The hearing date is the only date that the Court must schedule.

| **Event** | **Proposed Timing** |
|---|---|
| Deadline for commencing the mailing or emailing the Postcard Notice to Class Members ("Notice Date") | Not later than 15 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Not later than 14 calendar days after the Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt or mailing of exclusion requests or objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 7 calendar days before the Settlement Hearing |

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminary approving the proposed Settlement set forth in the Stipulation; (ii) approving of the form, content and manner of providing notice to the Class; (iii) appointing SCS as the claims administrator to administer the notice and claims process; (iv) approving Bernstein Liebhard LLP to continue to serve as Class Counsel, and the Kaplan Firm as Local Counsel, for a Settlement Class certified under Rule 23(b)(3); and (v) setting a date for the final Settlement Hearing.

Respectfully submitted,

Dated: September 23, 2024

**THE KAPLAN LAW FIRM**

/s/ Matthew B. Kaplan
Matthew B. Kaplan (VSB # 51027)
THE KAPLAN LAW FIRM
1100 N. Glebe Rd., Ste. 1010
Arlington, VA 22205
Tel: (703) 665-9529
mbkaplan@thekaplanlawfirm.com

*Local Counsel for Lead Plaintiff James*
*Shunk, Additional Named Plaintiff Justin*
*Gruetzmacher and the Settlement Class*

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey R. McEachern
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Lead Counsel for Lead Plaintiff James*
*Shunk, Additional Named Plaintiff Justin*
*Gruetzmacher, and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

On September 23, 2024, I filed the foregoing document (and any accompanying documents) with the Court's CM/ECF system, which will serve the documents on all counsel of record in this matter.

*/s/Matthew B. Kaplan*
Matthew B. Kaplan
